Filed 9/29/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>ALFREDO PEREZ, JR.,<br><br>    Defendant and Respondent. | F069020<br><br>(Super. Ct. No. CF94509578)<br><br><br>**OPINION** |

        APPEAL from a judgment of the Superior Court of Fresno County.  Jonathan B. Conklin, Judge.

        Elizabeth A. Egan and Lisa A. Smittcamp, District Attorneys, Rudy Carillo and Traci Fritzler, Chief Deputy District Attorneys, and Douglas O. Treisman, Deputy District Attorney, for Plaintiff and Appellant.

        Elizabeth Campbell, under appointment by the Court of Appeal, for Defendant and Respondent.

-ooOoo-

SEE CONCURRING AND DISSENTING OPINIONS

Alfredo Perez, Jr., (defendant) was convicted by jury of assault with force likely to produce great bodily harm, a violation of Penal Code section 245, former subdivision (a)(1).[1]  The jury further found he suffered two prior strike convictions (§ 667, subds. (b)-(i)) and served two prior prison terms (§ 667.5, subd. (b)).  On May 4, 1995, he was sentenced to a total of two years plus 25 years to life in prison.

In 2012, the Three Strikes Reform Act (hereafter the Act) created a postconviction release proceeding for third strike offenders serving indeterminate life sentences for nonserious and nonviolent felonies.  An inmate who meets the criteria enumerated in section 1170.126, subdivision (e), is to be resentenced as a second strike offender unless the court determines such resentencing would pose an unreasonable risk of danger to public safety.  (§ 1170.126, subd. (f); *People v. Yearwood* (2013) 213 Cal.App.4th 161, 168.)  Defendant's conviction was for a crime that was neither a serious nor a violent felony.

An inmate is ineligible for resentencing under the Act, however, if his or her current sentence is "for any of the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12."  (§ 1170.126, subd. (e)(2).)  Thus, an inmate is disqualified from resentencing if, inter alia, "[d]uring the commission of the current offense, [he or she] . . . was armed with a . . . deadly weapon, or intended to cause great bodily injury to another person."  (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).)

After the Act went into effect, defendant filed a petition for recall of sentence and request for resentencing under the Act.  The People opposed the petition on the ground, inter alia, defendant was armed with (and actually used) a deadly weapon during the commission of his offense.  Following a hearing, the trial court found defendant eligible

---

[1]     All statutory references are to the Penal Code unless otherwise stated.

for resentencing, and that resentencing defendant would not pose an unreasonable risk of danger to public safety. The court granted the petition and resentenced defendant as a second strike offender.

The People appeal, challenging the trial court's eligibility determination.

We hold an inmate is armed with a deadly weapon within the meaning of clause (iii) of subparagraph (C) of paragraph (2) of subdivision (e) of section 667 and clause (iii) of subparagraph (C) of paragraph (2) of subdivision (c) of section 1170.12 (hereafter referred to collectively as "clause (iii)") when he or she personally and intentionally uses a vehicle in a manner likely to produce great bodily injury. On the evidence found in the record of conviction, defendant used a vehicle as a deadly weapon. He is, therefore, ineligible for resentencing pursuant to section 1170.126, subdivision (c)(2). Accordingly, we reverse the trial court's order granting defendant's petition.

**FACTS AND PROCEDURAL HISTORY[2]**

> "On March 17, 1994, at approximately 2 p.m., Fred Sanchez was working as a sales clerk at Grand Auto in Fresno. He observed [defendant] and a man, who hereinafter will be referred to as the 'passenger,' enter the store. The passenger raised a Club, an auto anti-car theft device, a couple of feet above the aisle and then lowered it. The passenger was wearing a Pendleton wool-type jacket and had his back to Sanchez. [Defendant] spoke briefly to the passenger and then went up to Sanchez and spoke to him about some tires. While this conversation was taking place, the passenger left the store. Sanchez could see the passenger go out into the parking lot of the store and wait at the passenger side of a Blazer-type truck. [Defendant] went to the driver's side and drove away. Sanchez suspected that the passenger had stolen the Club from the store and [defendant] had attempted to divert his attention away from the theft. However, he did not call the police over the incident nor did he check the store inventory to determine if any items were missing.

---

**2** We quote the facts of defendant's commitment offense as they are stated in our nonpublished opinion in *People v. Perez* (Nov. 5, 1996, F023703), which was submitted by the People in their initial response to defendant's petition, and is contained in the clerk's transcript of the present appeal.

3.

"The next day, March 18, 1994, around noon, Sanchez saw the same passenger from the day before enter the store. He was wearing the same jacket, even though the day was 'incredibly' hot. He appeared nervous and kept turning his back toward Sanchez. Sanchez asked the passenger if he needed assistance and then followed the passenger out of the rear of the store after alerting the other store employee that he needed assistance. He heard rustling in the passenger's clothing. The passenger had not paid for any item from the store.

"The passenger entered the passenger side of the same Blazer as the day before. The passenger side window was rolled down. Sanchez was wearing a red smock shirt with the insignia of Grand Auto and his name tag. The passenger was in the Blazer less than a minute when Sanchez came up to its window. [Defendant] was the driver. Sanchez observed a bulge protruding from the passenger's clothing. Sanchez told the passenger to please give the merchandise back and he could leave. Sanchez then reached into the vehicle and grabbed at the package in the passenger's jacket. Sanchez identified the package as an Ultra Club which had a retail value of $59.55. Sanchez said, 'Give it up.' [Defendant] then looked toward Sanchez and said, 'Give it up.'

"[Defendant] then drove the vehicle in reverse. The passenger grabbed Sanchez's left arm and pushed it down, which prevented Sanchez from pulling his arm out of the vehicle. Sanchez yelled, 'Stop the vehicle' three times as the vehicle was moving in reverse. He was dragged when the vehicle went into reverse. He had to run to keep his balance. [Defendant] then drove the vehicle forward. Sanchez was able to pull his arm free once the vehicle moved forward, but he was afraid if he fell he could be run over.

"Sanchez estimated the speed of the Blazer to be 20 miles per hour, but admitted that at the preliminary hearing he had testified that the vehicle started at 10 miles per hour and was doing 15 when he pulled his arm free. He estimated the entire incident took a minute, his arm was in the vehicle after it was put in drive for 15 seconds, and that the vehicle traveled approximately 50 feet forward.

"After he broke free, Sanchez saw the vehicle leave the scene. Sanchez never recovered the merchandise from the passenger. The police arrived and Sanchez provided them with a description of the vehicle and the license plate number. The vehicle was registered to [defendant] and his wife. Sanchez's co-worker, Don Tatum, testified to seeing Sanchez run alongside the truck. He characterized the incident as Sanchez being

4.

dragged and 'running for his life.'[3]  Both Sanchez and Tatum picked out [defendant] from various photographs.

"[Defendant] testified that he was not in the store on March 17.  On that day he had gone with his father to the Sanger cemetery to visit the grave of his grandmother and then went to the father's house until 3:30 p.m.  His father testified similarly.  [Defendant] testified that on March 18, he was looking for a Universal Tire store when he met a woman friend, Elizabeth Ornelas.  Ornelas offered [defendant] $5 to give her male acquaintance, Dan, a ride to an auto parts store to get a part to fix her vehicle which had broken down.  [Defendant] testified he drove to the Grand Auto store but stayed in his vehicle and the passenger Dan went into the store.  When Dan returned to the vehicle he was angry with another man.  [Defendant] was not aware the man was a store employee.  When [defendant] said, 'Give it up,' he was talking to his passenger and meant quit fighting.

"[Defendant] stated he was afraid and admitted driving one mile an hour in reverse and two-to-three miles an hour in drive.  He stated at no time did Sanchez have to run.  He admitted that Sanchez had his arm in the passenger side of his vehicle when he put his vehicle in reverse and forward.  After he left the parking lot, he told his passenger to get out and returned the gas money to him.

"[Defendant] admitted telling the investigating officer that the man outside the vehicle was dressed 'like you and me.'  [Defendant] just wanted to leave.  He admitted not telling the investigating officer about Ornelas and never mentioned to the officer he had a witness that the police could contact.  [Defendant] admitted he told the investigating officer that his passenger had told him to leave since the man outside the vehicle was trying to rob him.

"Elizabeth Ornelas testified that she asked [defendant] to give a man she had recently met a ride to an auto parts store to help buy a part for the disabled vehicle they had been driving.  Her trial testimony, that she made this request of [defendant] as he was stopped at a red light, differed from her pretrial statement that this conversation took place in a parking lot."

---

**3**    In our discussion of one of defendant's claims on appeal, we expounded that Tatum testified "he saw Sanchez running for his life and was surprised that Sanchez was able to run that fast."

The jury was instructed pursuant to CALJIC No. 9.00 (1994 rev.), in pertinent part, that an assault required proof "1. A person willfully committed an act that by its nature would probably and directly result in the application of physical force on another person; and [¶] 2. At the time the act was committed, such person had the present ability to apply physical force to the person of another." Pursuant to CALJIC No. 9.02, they were told assault by means of force required proof of an assault committed by means of force likely to produce great bodily injury. They were further told great bodily injury referred to significant or substantial bodily injury or damage and not to trivial or insignificant injury or moderate harm, and that while actual bodily injury was not a necessary element of the crime, if such bodily injury was inflicted, its nature and extent were to be considered in connection with all the evidence in determining whether the means used and the manner in which it was used were such that they were likely to produce great bodily injury.[4] The jury convicted defendant of assault by means of force likely to produce great bodily injury (§ 245, former subd. (a)(1)).

On August 16, 2013, defendant petitioned the trial court for a recall of sentence pursuant to section 1170.126. Defendant represented he was eligible for such relief, in that neither his current conviction nor his prior serious or violent felony convictions (both of which were for first degree burglary) disqualified him. As previously stated, the People opposed the petition on the ground, inter alia, defendant was armed with (and actually used) a deadly weapon during the commission of his current offense and was, therefore, ineligible for resentencing. Defendant countered that the People's position was supported by neither the law nor the facts of the case. In pertinent part, he argued the fact

---

**4**      On December 2, 2014, by separate order and in compliance with Evidence Code section 459, this court granted the People's request for judicial notice of these selected jury instructions given by the trial court to the jury in the trial of defendant's commitment offense. We do not take judicial notice beyond that order. (See *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2.)

6.

that virtually any object could be used in a harmful way did not mean possession constituted arming or qualified the item as a deadly weapon.

On February 5, 2014, a hearing was held on defendant's petition.[5] The trial court characterized defendant's use of the vehicle during the offense as "incidental," and found defendant "not ineligible to be resentenced, due to the method in which the motor vehicle was used . . . ." It continued the hearing on the question whether defendant posed an unreasonable risk to public safety if resentenced and likely released.

On February 21, 2014, the People filed further opposition to defendant's resentencing, again claiming defendant was ineligible therefor, and arguing he posed an unreasonable danger if released. Specifically, on the eligibility question, the People asserted defendant necessarily was armed with a deadly weapon during the commission of the aggravated assault of which he was convicted, having employed an automobile as the instrumentality of the assault. Defendant filed a response in which he focused on the dangerousness issue. At the March 7, 2014, hearing, the trial court reiterated its finding of eligibility. It further found defendant did not pose an unreasonable risk to public safety, recalled the previously imposed sentence, and resentenced defendant to the upper term of four years, doubled to eight years due to the prior strike offenses, plus two years for the prior prison term enhancements. Defendant was awarded custody credits and ordered to report to parole for placement on postrelease community supervision.

## DISCUSSION

The People contend the trial court erred in finding defendant eligible for resentencing, because defendant was "armed with a . . . deadly weapon" — to wit, a vehicle — in the commission of the current offense within the meaning of clause (iii).[6]

---

[5]  As the judge who originally sentenced defendant was no longer on the bench, the matter was heard by a different judge. (See § 1170.126, subd. (j).)

[6]  Although the People's notice of appeal stated they were appealing the finding of eligibility as well as the "orders, judgment and resentencing," on appeal they contest only

7.

While we depart somewhat from the People's line of reasoning, we reach the same conclusion. The record of conviction reflects defendant committed assault by means of force likely to produce great bodily injury. The facts show defendant personally and intentionally used a vehicle in the commission of that assault. When a vehicle is used as a means of force likely to produce great bodily injury, it is a deadly weapon. Defendant was, therefore, "armed with a . . . deadly weapon" within the meaning of clause (iii). Accordingly, defendant is ineligible for resentencing pursuant to section 1170.126, subdivision (e)(2).[7]

## I. BECAUSE THE TRIAL COURT MADE BOTH FACTUAL AND LEGAL DETERMINATIONS, MULTIPLE STANDARDS OF REVIEW APPLY.

The standard of review applicable to an eligibility determination depends on the nature of the finding or findings a trial court is called upon to make in a given resentencing proceeding. In the present case, the trial court necessarily made both factual and legal determinations.

The eligibility criteria contained in clause (iii) refer to the "facts attendant to commission of the actual offense . . . ." (*People v. Bradford* (2014) 227 Cal.App.4th 1322, 1332.) In deciding whether a defendant's current offense falls within those criteria, a trial court "make[s] a factual determination that is not limited by a review of the particular statutory offenses and enhancements of which [the] petitioner was convicted."

---

the eligibility finding. The People have the right to appeal such a finding pursuant to section 1238, subdivision (a)(5). (*People v. Superior Court (Martinez)* (2014) 225 Cal.App.4th 979, 987-988.)

[7] In light of our conclusion, we need not reach the People's claim defendant also "personally used a dangerous or deadly weapon" within the meaning of section 1192.7, subdivision (c)(23), so as to render him ineligible pursuant to section 1170.126, subdivision (e)(1). (See generally *People v. Banuelos* (2005) 130 Cal.App.4th 601, 604-605.)

8.

(*Ibid.*).**8**  The trial court makes this factual determination based on the evidence found in the record of conviction.  (*People v. Hicks* (2014) 231 Cal.App.4th 275, 285-286; *People v. Bradford*, *supra*, at p. 1331; *People v. Blake* (2004) 117 Cal.App.4th 543, 559.)**9**  It is

---

**8**    In its discussion of whether a defendant is entitled to an evidentiary hearing on the issue of eligibility for resentencing, the appellate court in *People v. Oehmigen* (2014) 232 Cal.App.4th 1 states eligibility is not a question of fact requiring the resolution of disputed issues; rather, "[w]hat the trial court decides is a question of *law*:  whether the facts in the record of conviction are the proper subject of consideration, and whether they establish eligibility." (*Id*. at p. 7.)  Whatever the validity of this statement with respect to a petitioner's right to an *evidentiary* hearing, we believe it overstates the legal nature of our review.

**9**    The term "record of conviction" has been "used technically, as equivalent to the record on appeal [citation], or more narrowly, as referring only to those record documents reliably reflecting the facts of the offense for which the defendant was convicted." (*People v. Reed* (1996) 13 Cal.4th 217, 223; see *People v. Houck* (1998) 66 Cal.App.4th 350, 356.)  Police reports are not part of the record of conviction (see *Shepard v. United States* (2005) 544 U.S. 13, 16; *Draeger v. Reed* (1999) 69 Cal.App.4th 1511, 1521), nor are a defendant's statements made after conviction and recounted in a postconviction report of the probation officer (*People v. Trujillo* (2006) 40 Cal.4th 165, 179).  The record of conviction does include, however, the preliminary hearing transcript (*People v. Reed*, *supra*, 13 Cal.4th at p. 223), transcript of the jury trial (*People v. Bartow* (1996) 46 Cal.App.4th 1573, 1579-1580), and the appellate record, including the appellate opinion (*People v. Woodell* (1998) 17 Cal.4th 448, 456).  Portions of the probation officer's report may or may not be part of the record of conviction.  (See *People v. Reed*, *supra*, 13 Cal.4th at p. 230; *People v. Burnes* (2015) 242 Cal.App.4th 1452, 1459.)

   Even when an item is part of the record of conviction, it is not automatically relevant or admissible for a particular purpose.  (See *People v. Trujillo*, *supra*, 40 Cal.4th at pp. 179-181; *People v. Woodell*, *supra*, 17 Cal.4th at p. 457; *People v. Guerrero* (1988) 44 Cal.3d 343, 356, fn. 1.)  Its admission must comport with the rules of evidence, particularly the hearsay rule and exceptions thereto.  (See *People v. Woodell*, *supra*, 17 Cal.4th at pp. 457-460; *People v. Reed*, *supra*, 13 Cal.4th at pp. 220, 224-228, 230-231; *People v. Bartow*, *supra*, 46 Cal.App.4th at pp. 1579-1580.)  Thus, although part of the record of conviction, the appellate opinion will not necessarily be relevant or admissible in its entirety.  This may be especially true where the facts recited therein have their source in the probation officer's report rather than the trial evidence.  (See *People v. Trujillo*, *supra*, 40 Cal.4th at pp. 180-181; *People v. Reed*, *supra*, 13 Cal.4th at pp. 220, 230-231.)  In the present case, the facts in the appellate opinion were derived from the evidence presented at trial.

9.

subject to review for substantial evidence under the familiar sufficiency of the evidence standard. (*People v. Guilford* (2014) 228 Cal.App.4th 651, 661; see, e.g., *People v. Maciel* (2013) 57 Cal.4th 482, 514-515.)**10**

When the issue is one of the interpretation of a statute and its applicability to a given situation, however, it is a question of law we review independently. (*People v. Superior Court (Cervantes)* (2014) 225 Cal.App.4th 1007, 1013; accord, *People v. Tran* (2015) 61 Cal.4th 1160, 1166; *People v. Christman* (2014) 229 Cal.App.4th 810, 815; see *Hermosa Beach Stop Oil Coalition v. City of Hermosa Beach* (2001) 86 Cal.App.4th 534, 549.) " ' "In interpreting a voter initiative" ' . . . , ' "we apply the same principles that

---

**10** Defendant contends allowing a trial court to find a petitioner ineligible for resentencing based on facts not found true by a jury deprives the petitioner of his or her right to a jury trial under the Sixth and Fourteenth Amendments to the United States Constitution. In *People v. Blakely* (2014) 225 Cal.App.4th 1042, 1059-1062 (*Blakely*), we rejected the claim an inmate seeking resentencing pursuant to section 1170.126 had a Sixth Amendment right to have disqualifying factors pled or proven to a trier of fact beyond a reasonable doubt. We found *Apprendi v. New Jersey* (2000) 530 U.S. 466 and its progeny (e.g., *Alleyne v. United States* (2013) 570 U.S. ___ [133 S.Ct. 2151]; *Cunningham v. California* (2007) 549 U.S. 270; *Blakely v. Washington* (2004) 542 U.S. 296) "do not apply to a determination of eligibility for resentencing under the Act." (*Blakely*, *supra*, 225 Cal.App.4th at p. 1060.) We and other courts have adhered to this conclusion, since "[a] finding an inmate is not eligible for resentencing under section 1170.126 does not increase or aggravate that individual's sentence; rather, it leaves him or her subject to the sentence originally imposed. The trial court's determination . . . [does] not increase the penalty to which defendant [is] already subject, but instead disqualifie[s] defendant from an act of lenity on the part of the electorate to which defendant [is] not constitutionally entitled." (*People v. Osuna* (2014) 225 Cal.App.4th 1020, 1040; accord, *People v. Chubbuck* (2014) 231 Cal.App.4th 737, 748; *People v. Brimmer* (2014) 230 Cal.App.4th 782, 805; *People v. Guilford*, *supra*, 228 Cal.App.4th at pp. 662-663; *People v. Bradford*, *supra*, 227 Cal.App.4th at pp. 1334-1336; but see *People v. Arevalo* (2016) 244 Cal.App.4th 836, 852-853.) Whatever implications recent pronouncements may have with respect to the determination whether, for purposes of imposing an *initial* sentence, a prior conviction constitutes a strike (see, e.g., *Descamps v. United States* (2013) 570 U.S. ___, ___-___, ___ [133 S.Ct. 2276, 2281-2286, 2293]; *People v. Saez* (2015) 237 Cal.App.4th 1177, 1198-1208), defendant fails to convince us his constitutional rights are violated by judicial factfinding on the question of eligibility for resentencing under the Act. (See *Blakely*, *supra*, 225 Cal.App.4th at p. 1063.)

govern statutory construction. [Citation.] Thus, [1] 'we turn first to the language of the statute, giving the words their ordinary meaning.' [Citation.] [2] The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme [in light of the electorate's intent]. [Citation.] [3] When the language is ambiguous, 'we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.' " ' [Citation.] 'In other words, our "task is simply to interpret and apply the initiative's language so as to effectuate the electorate's intent." ' [Citation.]" (*People v. Arroyo* (2016) 62 Cal.4th 589, 593.)

## II.  DEFENDANT USED HIS VEHICLE AS A DEADLY WEAPON IN COMMISSION OF THE ASSAULT.

At the time defendant committed his current offense, section 245, subdivision (a)(1) prescribed the punishment for "[a]ny person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury . . . ."[11]

---

[11]     "[S]ection 245, [former] subdivision (a)(1) . . . 'defines only one offense, to wit, "assault upon the person of another with a deadly weapon or instrument [other than a firearm] or by any means of force likely to produce great bodily injury . . . ." The offense of assault by means of force likely to produce great bodily injury is not an offense separate from . . . the offense of assault with a deadly weapon.' [Citation.]" (*People v. McGee* (1993) 15 Cal.App.4th 107, 114-115 (*McGee*).)

At issue in *McGee* was whether a deadly weapon use enhancement had to be stricken given that section 12022, former subdivision (b) by its terms precluded imposition of such an enhancement where use of a deadly weapon was an element of the underlying offense. (*McGee*, *supra*, 15 Cal.App.4th at p. 110.) In concluding the enhancement was improper, the appellate court reasoned: "[I]n determining whether use of a deadly weapon other than a firearm is an element of a section 245, [former] subdivision (a)(1) conviction, the question is not simply whether, in the abstract, the section can be violated without using such a weapon. Rather, the conduct of the accused, i.e., the means by which he or she violated the statute, must be considered. [¶] . . . [¶] Here, defendant's use of a deadly weapon other than a firearm was the sole means by which he violated section 245, [former] subdivision (a)(1). The assault by means of force likely to produce great bodily injury was defendant's stabbing of the victim with a knife. Hence, his use of this deadly weapon was an element of the offense, within the meaning

It is apparent assault by means of force can be committed without the involvement of any sort of weapon or the intent to cause great bodily injury. Accordingly, it does not automatically disqualify an inmate from resentencing under clause (iii).

Nevertheless, the use of a deadly weapon does not preclude a conviction for assault by means of force. (*McGee*, *supra*, 15 Cal.App.4th at p. 109 [the defendant convicted of assault by means of force after he stabbed the victim with a knife].)

"As used in section 245, subdivision (a)(1), a 'deadly weapon' is 'any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury.' [Citation.] Some few objects, such as dirks and blackjacks, have been held to be deadly weapons as a matter of law; the ordinary use for which they are designed establishes their character as such. [Citations.] Other objects, while not deadly per se, may be used, under certain circumstances, in a manner likely to produce death or great bodily injury. In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue. [Citations.]" (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028-1029 (*Aguilar*).)[12]

---

of section 12022, [former] subdivision (b), even though the crime was pleaded as an assault by means of force likely to produce great bodily injury rather than as an assault with a deadly weapon other than a firearm." (*Id.* at p. 115.)

Under section 245 as it currently reads, assault with a deadly weapon is addressed in subdivision (a)(1), while assault by means of force is addressed in subdivision (a)(4).

[12] At issue in *Aguilar* was whether hands and feet could constitute deadly weapons, or whether a deadly weapon within the meaning of the statute had to be an object extrinsic to the human body. (*Aguilar*, *supra*, 16 Cal.4th at pp. 1026-1027, 1034.) Within that context, *Aguilar* found "sound" the inference, based on inclusion of both the deadly weapon and the assault by means of force clauses in former subdivision (a)(1) of section 245, that the Legislature intended a meaningful difference to exist between the two clauses. (*Aguilar*, *supra*, 16 Cal.4th at p. 1030.) We do not read *Aguilar* as undermining *McGee* or *In re Mosley* (1970) 1 Cal.3d 913, 919, footnote 5, on which *McGee* relied. (*McGee*, *supra*, 15 Cal.App.4th at pp. 110, 114.)

12.

Although a vehicle is not a deadly weapon per se, it can become one, depending on how it is used.  (See, e.g., *People v. Oehmigen*, *supra*, 232 Cal.App.4th at pp. 5, 11 [the defendant purposefully drove his car at police vehicle]; *People v. Aznavoleh* (2012) 210 Cal.App.4th 1181, 1183 [the defendant deliberately raced vehicle through red light at busy intersection and collided with another vehicle, causing injury to another]; *People v. Golde* (2008) 163 Cal.App.4th 101, 109 [the defendant accelerated toward victim at about 15 miles per hour three or four times as victim ran back and forth to avoid vehicle]; *People v. Russell* (2005) 129 Cal.App.4th 776, 779, 781-782 [the defendant knowingly and intentionally pushed victim into path of oncoming vehicle]; *People v. Wright* (2002) 100 Cal.App.4th 703, 705, 707-709 [the defendant intentionally drove pickup truck close to persons with whom he had contentious relations].)[13]

In the present case, the jury was instructed that assault by means of force required proof of an assault committed by means of force likely to produce great bodily injury. They were told great bodily referred to significant or substantial bodily injury or damage, not trivial or insignificant injury or moderate harm.  "Jurors are presumed to understand and follow the court's instructions.  [Citation.]"  (*People v. Holt* (1997) 15 Cal.4th 619, 662.)  That is " '[t]he crucial assumption underlying our constitutional system of trial by jury.' [Citations.]"  (*People v. Yeoman* (2003) 31 Cal.4th 93, 139; see, e.g., *Francis v. Franklin* (1985) 471 U.S. 307, 324, fn. 9.)  When the jury convicted defendant of assault by means of force likely to produce great bodily injury, they necessarily found the force used by defendant in assaulting Sanchez, the victim, was likely to produce great bodily

---

[13]     Other objects that, while not deadly weapons as a matter of law, have been found to have been used as such for purposes of convictions of assault with a deadly weapon, include a " 'sharp' and 'pointy' " knife (*In re D.T.* (2015) 237 Cal.App.4th 693, 697, 699 (*D.T.*)); a sharp pencil (*People v. Page* (2004) 123 Cal.App.4th 1466, 1468, 1472); an apple with a straight pin embedded in it (*In re Jose R.* (1982) 137 Cal.App.3d 269, 276); a fingernail file (*People v. Russell* (1943) 59 Cal.App.2d 660, 665); and even a pillow (*People v. Helms* (1966) 242 Cal.App.2d 476, 486-487).

13.

injury. (See *People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1065-1066.) The sole means by which defendant applied this force was the vehicle he was driving. Thus, the record of conviction establishes defendant used the vehicle in a manner capable of producing, and likely to produce, at a minimum great bodily injury — i.e., as a deadly weapon. (See *McGee*, *supra*, 15 Cal.App.4th at pp. 110, 115; cf. *People v. Bradford*, *supra*, 227 Cal.App.4th at pp. 1342-1343.) Even under the deferential substantial evidence standard of review, the record of conviction does not support the trial court's contrary findings that defendant's use of the vehicle during the offense was merely "incidental," or that Sanchez was "dragged slightly, though the dragging wasn't anything more than keeping pace with the car." The vehicle was the instrumentality by which defendant committed the offense, and whatever speed defendant was driving, Sanchez was dragged and had to run to keep his balance to such an extent that a witness characterized Sanchez as " 'running for his life' " and expressed surprise Sanchez was able to run that fast.[14]

---

[14] The dissent quotes the statement in *People v. Newman* (2016) 2 Cal.App.5th 718, 721 (*Newman*), that "[i]n determining eligibility for Proposition 36 relief, a court is empowered to consider the record of conviction and to make factual findings by a preponderance of the evidence, even if those findings were not made by the jury or the trial court in convicting a defendant of the current offense." We agree the resentencing court may do so, at least where eligibility under clause (iii) is concerned. Thus, for example, a resentencing court could properly find a defendant disqualified from resentencing based on the defendant's intent to cause great bodily injury to another person, even though the jury in the defendant's case was never asked to make such a finding or found the defendant did not actually inflict great bodily injury — the situation in *Newman*. To hold otherwise would be to render nugatory a portion of clause (iii).

Contrary to the apparent positions of the resentencing court and dissent in this case, however, this does not mean the jury's verdict can be disregarded altogether, or that the resentencing court can decline to find, by the applicable standard of preponderance of the evidence, a fact the jury necessarily found beyond a reasonable doubt. We do not read *Newman* as countenancing such a result; despite its occasionally sweeping statements, "we must remember ' " ' "the language of an opinion must be construed with reference to the facts presented by the case, and the positive authority of a decision is coextensive only with such facts." ' " [Citations.]' [Citation.]" (*Moon v. Superior Court*

14.

Defendant argues the record of conviction must establish he intended to use the vehicle as a deadly weapon. In part, he relies on *People v. Graham* (1969) 71 Cal.2d 303, disapproved on another ground in *People v. Ray* (1975) 14 Cal.3d 20, 32, wherein the California Supreme Court stated:

> "Although the manner of the use of an object does not automatically determine whether a defendant was 'armed with a dangerous or deadly weapon,' the method of use may be evidence of the intent of its possessor. In *People v. Raleigh* (1932) 128 Cal.App. 105, the District Court of Appeal . . . adopted a position appropriate to the present case, 'that a distinction should be made between two classes of "dangerous or deadly weapons". There are, first, those instrumentalities which are weapons in the strict sense of the word, and, second, those instrumentalities which are not weapons in the strict sense of the word, but which may be used as such. . . . The instrumentalities falling into the second class, . . . which are not weapons in the strict sense of the word and are not "dangerous or deadly" to others in the ordinary use for which they are designed, may not be said as a matter of law to be "dangerous or deadly weapons." When it appears, however, that an instrumentality . . . falling within the [second] class is capable of being used in a "dangerous or deadly" manner, and it may be fairly inferred from the evidence that its possessor intended on a particular occasion to use it as a weapon should the circumstances require, we believe that its character as a "dangerous or deadly weapon" may be thus established, at least for the purposes of that occasion.' (128 Cal.App. at pp. 108-109.)" (*People v. Graham*, *supra*, 71 Cal.2d at pp. 327-328; see *People v. McCoy* (1944) 25 Cal.2d 177, 188-189; *People v. Page*, *supra*, 123 Cal.App.4th at p. 1471; *People v. Moran* (1973) 33 Cal.App.3d 724, 730.)

In *D.T.*, *supra*, 237 Cal.App.4th at page 702, the Court of Appeal explained the foregoing "does no more than establish that intent to use an item as a weapon can be sufficient, in some circumstances, to qualify the item as a deadly weapon. It in no way states that proof of such intent is necessary to this inquiry." The appellate court pointed to *People v. Colantuono* (1994) 7 Cal.4th 206, 214, in which the California Supreme

---

(2005) 134 Cal.App.4th 1521, 1532, quoting *Trope v. Katz* (1995) 11 Cal.4th 274, 284.) *Newman* deals only with a situation in which the resentencing court made factual findings that went beyond those made by the jury, not that contradicted the jury's verdict.

Court held that " 'the intent for an assault with a deadly weapon is the intent to attempt to commit a battery, a battery being "any willful and unlawful use of force or violence upon the person of another." [Citation.]' "

We tend to agree with *D.T.* (See *People v. Aznavoleh*, *supra*, 210 Cal.App.4th at pp. 1183, 1186-1187 [setting out elements of assault and assault with a deadly weapon in case involving use of vehicle].) Even assuming such an intent must be shown, however, it is established by the record of conviction in the present case. Sanchez yelled " 'Stop the vehicle' " three times as the vehicle was moving in reverse, yet defendant then drove the vehicle forward "at a great speed." Sanchez only managed to pull his arm free shortly before defendant drove out of the store parking lot onto Blackstone without even stopping at the stop sign.

**III.** **BECAUSE DEFENDANT PERSONALLY USED THE VEHICLE AS A DEADLY WEAPON IN COMMISSION OF THE ASSAULT, HE WAS ARMED WITH A DEADLY WEAPON DURING THE COMMISSION OF HIS CURRENT OFFENSE AND SO WAS INELIGIBLE FOR RESENTENCING UNDER SECTION 1170.126.**

It has long been the law that "[a] person is 'armed' with a deadly weapon when he simply carries a weapon or has it available for use in either offense or defense. [Citation.]" (*People v. Stiltner* (1982) 132 Cal.App.3d 216, 230; see *Blakely*, *supra*, 225 Cal.App.4th at p. 1051.) Here, because defendant personally used the vehicle as a deadly weapon, he necessarily had it available for use and so was armed with it during the commission of his current offense, since "use" subsumes "arming." (See, e.g., *People v. Strickland* (1974) 11 Cal.3d 946, 961; *People v. Schaefer* (1993) 18 Cal.App.4th 950, 951; *People v. Turner* (1983) 145 Cal.App.3d 658, 684, disapproved on other grounds in *People v. Newman* (1999) 21 Cal.4th 413, 415, 422-423, fn. 6 & *People v. Majors* (1998) 18 Cal.4th 385, 411.)

The question, then, is whether voters intended clause (iii) to encompass arming based on personal use as a deadly weapon of an object that is not a deadly weapon per se. The trial court found defendant's use of the motor vehicle in the present case was "not the

16.

anticipated use of a deadly weapon contemplated by [section] 1170.126." Reviewing this question of law independently, we disagree.

> " 'The enacting body is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted' [citation], 'and to have enacted or amended a statute in light thereof' [citation]. 'This principle applies to legislation enacted by initiative. [Citation.]' [Citation.]
>
> "Where, as here, 'the language of a statute uses terms that have been judicially construed, " 'the presumption is almost irresistible' " that the terms have been used " 'in the precise and technical sense which had been placed upon them by the courts.' " [Citations.] This principle . . . applies to legislation adopted through the initiative process. [Citation.]' [Citation.]" (*Blakely*, *supra*, 225 Cal.App.4th at p. 1052.)

In light of the foregoing, we conclude the electorate intended "armed with a . . . deadly weapon," as that phrase is used in clause (iii), to mean carrying a deadly weapon or having it available for offensive or defensive use. (See *Blakely*, *supra*, 225 Cal.App.4th at p. 1052.) When the object at issue is a deadly weapon per se, simply carrying the object or having it available for use is sufficient to render a defendant ineligible for resentencing under the Act. By contrast, where, as here, the object is *not* a deadly weapon per se, merely carrying the object or having it available for use will not, without more, be enough to bring a defendant within the scope of clause (iii).[15] Here, however, defendant actually and personally *used* the object *as a deadly weapon*. Because enhancing public safety was a key purpose of the Act, despite the fact the Act " 'diluted' " the three strikes law somewhat (*Blakely*, *supra*, 225 Cal.App.4th at p. 1054),

---

[15] For example, the driver of a getaway vehicle in a robbery who merely puts the vehicle to the ordinary use for which it was designed — transportation — technically has the vehicle available for offensive or defensive use as a weapon. Yet we have no doubt the electorate did not intend clause (iii) to reach that type of conduct, at least when unaccompanied by some sort of nefarious intent. (See *People v. Graham*, *supra*, 71 Cal.2d at pp. 327-328.) We are not presented with the question, and express no opinion, whether not actually using an object as a deadly weapon, but intending to do so should the need arise, falls within clause (iii).

17.

we conclude the electorate did not intend to distinguish, under such circumstances, between objects that are deadly weapons per se and those whose characterization as such depends upon the use to which they are put.  (See generally *People v. Osuna*, *supra*, 225 Cal.App.4th at pp. 1034-1038 [discussing Act's purpose and voters' intent].)

## DISPOSITION

The order granting the petition for recall of sentence, recalling the previously imposed sentence pursuant to Penal Code section 1170.126, and resentencing defendant is reversed.  The matter is remanded to the trial court with directions to find defendant ineligible for resentencing, deny the petition, and reinstate defendant's original sentence.


_____

DETJEN, J.

I CONCUR:


_____

POOCHIGIAN, Acting P.J.

18.

POOCHIGIAN, J., Concurring

I concur to express my view concerning the significance of certain facts underlying the conviction below.

The majority opinion cites several cases whereby motor vehicles were deemed dangerous weapons as a result of demonstrably intentional and threatening conduct calculated to place others at risk of injury or with reckless disregard for such peril. Clearly, assault requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will likely and directly result in the application of physical force. In this case, the purpose of the use of the vehicle was arguably not to inflict injury but to provide a means of escape. Indeed, the court's conclusion at the hearing on the petition for resentencing that the use of the vehicle was "incidental" was presumably based on that understanding. It seems clear that any determination regarding whether the vehicle was employed as a deadly weapon under such circumstances should take into account the element of speed.

The evidence indicated that the path of the vehicle's movement involved a distance of roughly 50 feet. The passenger grabbed victim Sanchez's left arm and pushed it down, which prevented him from pulling his arm out of the vehicle as it was in motion. As the vehicle was moving in reverse, Sanchez yelled, "Stop the vehicle" three times. While the defendant contended that the vehicle moved at the rate of one to three miles per hour during the episode, the victim stated that the vehicle was traveling about 20 miles per hour as he ran alongside. During the preliminary hearing, he had stated that at the time he pulled his arm free, the vehicle was moving at a speed of about 15 miles per hour and that the ordeal lasted one minute. Under the circumstances in which the victim's arm was apparently held as he ran alongside the moving vehicle, the speed suggested by the victim's testimony seems questionable.[1] Indeed, that fact may have affected the trial

---

[1] It is noteworthy that the winner of the 100-meter sprint in the 2016 Olympic Games won with a time of 9.81 seconds – a rate of 22.8 miles per hour.

court's conclusion that the victim was "dragged slightly" – in contrast to a coworker's observation that Sanchez was "running for his life."

Despite any misgivings about the accuracy of lay testimony regarding the speed of the vehicle, the coworker's observation about the peril presented is certainly relevant in assessing whether the vehicle was operated as a deadly weapon. It is also instructive that the jury found appellant guilty of assault with force likely to produce great bodily injury. When coupled with testimony that the passenger held onto Sanchez's extended arm while the vehicle was in motion, that Sanchez yelled for the driver to stop, that he presumably struggled to be released from the passenger's hold, and that he was finally able to free himself when Perez put the vehicle in drive after moving in reverse, I am satisfied with the conclusion that the vehicle was employed as a deadly weapon – thus rendering the defendant ineligible for resentencing.

_____
POOCHIGIAN, Acting P.J.

2.

**FRANSON, J., Dissenting.**

The People appeal the trial court's order granting Alfredo Perez, Jr.'s petition to recall his sentence, contending Perez was armed with and used a deadly weapon during the commission of an assault. The majority agrees and reverses the trial court's order granting defendant's petition. Based on the trial court's underlying factual findings and determination, I respectfully dissent and would affirm.

*Factual and Procedural Background*

The following factual summary of facts pertinent to this appeal come from the appellate opinion affirming Perez's current conviction, which is repeated verbatim in the majority opinion. At trial, Fred Sanchez testified he was working as a sales clerk at Grand Auto in Fresno on March 17, 1994, when Perez and another man (the passenger) entered the store midafternoon. The passenger, with his back to Sanchez, was seen holding a Club, an automobile anti-theft device. Perez spoke briefly to the passenger and then went up to Sanchez and spoke to him about tires. During this conversation, the passenger left the store and went to stand by the passenger side of a Blazer-type vehicle. Perez left the store, went to the driver's side of the vehicle, and the two drove away. Sanchez suspected the passenger had stolen the Club from the store and that Perez had tried to divert his attention away from the theft.

The following day, Sanchez saw the passenger again enter the store. Sanchez approached the passenger, asked if he needed assistance, and, after alerting other store employees that he needed assistance, followed him out of the rear of the store. While following the passenger, Sanchez heard rustling in the passenger's clothing, although he had not paid for any items from the store.

Once out of the store, the passenger entered the passenger side of the same Blazer as the day before. Perez was again driving. Sanchez approached the open passenger window and observed a bulge protruding from the passenger's clothing. Sanchez told the

passenger to give the merchandise back and he could leave. Sanchez then reached into the vehicle and grabbed the package under the passenger's jacket, which turned out to be an "Ultra Club." Sanchez said, "Give it up." Perez looked toward Sanchez and said the same.

Perez then drove the vehicle in reverse while the passenger held onto Sanchez's arm. Sanchez implored Perez to stop the vehicle as it continued to move in reverse. Sanchez was dragged by the movement of the vehicle and had to run to keep his balance. Perez then put the vehicle in drive and the vehicle moved forward approximately 50 feet, when Sanchez was able to pull his arm free.[1] Sanchez estimated the Blazer was going about 20 miles per hour, although he admitted that at the preliminary hearing he estimated the vehicle started at 10 miles per hour and was going about 15 miles per hour when he pulled his arm free. Sanchez estimated that the entire incident took about a minute, 15 seconds of that with his arm in the vehicle as it was moving forward.

After he broke free, Sanchez saw the vehicle leave. A coworker of Sanchez described Sanchez as "running for his life" alongside the Blazer.

A jury convicted Perez of assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1))[2] and found true the allegations that Perez had sustained two prior strike convictions and suffered two prior prison terms. The trial court sentenced Perez to an indeterminate term of 25 years to life, plus two one-year enhancements for the prison priors.

*Resentencing Under Proposition 36*

The trial court's consideration of a petition for resentencing under Proposition 36 is a two-step process. First, the court determines whether the petitioner is eligible for

---

[1]    There is no indication Perez was injured as a result. At the subsequent hearing on the petition for resentencing, the parties described the injury as "not major" and "a few scrapes." The injury required no hospitalization or medical treatment.

[2]    All further statutory references are to the Penal Code unless otherwise stated.

resentencing.  If the petitioner is eligible, the court proceeds to the second step, and resentences the petitioner under Proposition 36 unless it determines that doing so would pose "an unreasonable risk of danger to public safety."  (§ 1170.126, subd. (f).)

At issue here is the first step of the process – the initial eligibility determination. Section 1170.126 grants the trial court the power to ultimately determine whether a third strike offender is eligible for resentencing *only* if, as an initial matter, the inmate satisfies the criteria set out in subdivision (e) of the statute.  Generally, for purposes here, those criteria are: (1) the inmate is serving a life term under the three strikes law for a conviction of a felony or felonies not defined as serious and/or violent under section; (2) the inmate's current sentence was not imposed for an offense in which the defendant used or was armed with a firearm or deadly weapon; and (3) the inmate has no prior convictions for certain specified offenses.  If the inmate does not satisfy each of the criteria, the trial court must deny the request for resentencing.  Perez satisfies the first and third requirements.  This appeal relates to the second criteria.

## DISCUSSION

*Eligibility Determination*

The eligibility determination required by section 1170.126, subdivision (e) is not a discretionary determination by the trial court.  (*People v. Bradford* (2014) 227 Cal.App.4th 1322, 1336.)  The Three Strikes Reform Act of 2012 (the Act) provides that "the court shall determine whether the petitioner satisfies the criteria in subdivision (e) .…"  (§ 1170.126, subd. (f).)  And because the Act fixes ineligibility not on statutory violations or enhancements, but on "facts attendant to commission of the actual offense, the express statutory language requires the trial court to make a *factual determination* that is not limited by a review of the particular statutory offenses and enhancements of which petitioner is convicted."  (*People v. Bradford, supra,* at p. 1332, italics added.)

Instead, "the trial court must make this *factual determination* based solely on evidence found in the record of conviction .…"  (*People v. Bradford, supra,* 227

Cal.App.4th at p. 1331, italics added.)  As stated in *People v. Oehmigen* (2014) 232 Cal.App.4th 1, "[E]ligibility is *not* a question of fact that requires the resolution of disputed issues.  The *facts* are limited to the record of conviction underlying a defendant's commitment offense; the statute neither contemplates an evidentiary hearing to establish these facts, nor any other procedure for receiving new evidence beyond the record of conviction.  [Citation.]  What the trial court decides is a question of *law*: whether the facts in the record of conviction are the proper subject of consideration, and whether they establish eligibility." (*Id.* at p. 7, original italics.)  As stated recently in *People v. Newman* (2016) 2 Cal.App.5th 718, 721, "In determining eligibility for Proposition 36 relief, a court is empowered to consider the record of conviction and to *make factual findings* by a preponderance of the evidence, even if those findings were not made by the jury or the trial court in convicting a defendant of the current offense."[3] (Italics added.)  Simply put, the trial court takes the facts from the record of conviction and determines, from its interpretation of those facts, whether a petitioner is eligible for resentencing.

"[D]isqualifying factors need not be pled and proved to a trier of fact beyond a reasonable doubt; hence, a trial court determining whether an inmate is eligible for resentencing under section 1170.126 may examine relevant, reliable, admissible portions of the record of conviction to determine the existence of a disqualifying factor." (*People v. Blakely* (2014) 225 Cal.App.4th 1042, 1048-1049.)  For this purpose, the record of conviction includes pleadings, trial transcripts, pretrial motions, and any appellate

---

[3]     In *People v. Newman* the defendant was convicted of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)) but found not true the allegation that he inflicted great bodily injury on the victim during the assault (§ 12022.7). Defendant subsequently filed a Proposition 36 petition for recall and resentencing.  In denying the petition, the court found the defendant, based on the facts of the case, intended to cause great bodily injury in the commission of the assault, disqualifying him from resentencing.  (*People v. Newman, supra,* 2 Cal.App.5th at pp. 722-723.)

opinion. (See, e.g., *People v. Manning* (2014) 226 Cal.App.4th 1133, 1140-1141; *People v. Osuna* (2014) 225 Cal.App.4th 1020, 1027, 1030; *People v. White* (2014) 223 Cal.App.4th 512.) "[A] trial court need only find the existence of a disqualifying factor by a preponderance of the evidence. (Evid. Code, § 115; [citation].)" (*People v. Osuna, supra,* at p. 1040.)

*Standard of Review*

The trial court's underlying factual determination that Perez was eligible for resentencing is reviewed on appeal for substantial evidence. (*People v. Bradford, supra,* 227 Cal.App.4th at p. 1331; 3 Witkin & Epstein, Cal. Criminal Law (4th ed. 2016 supp.) Punishment, § 421C.) Furthermore, "the task of an appellate court is to 'review the correctness of the challenged ruling, not of the analysis used to reach it.' [Citation.] ""'If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' [Citation.]"'" (*People v. Hughes* (2012) 202 Cal.App.4th 1473, 1481.)

*Trial Court Hearing and Order*

At the hearing on the petition, the trial court reviewed the facts and circumstances of the prior conviction and made the preliminary determination that they did not support a finding of ineligibility. The court was provided with a copy of this court's 1996 opinion affirming Perez's conviction and the people's summary of the facts from that opinion. The court described its interpretation of the facts of the conviction, as the victim being "dragged slightly, though the dragging wasn't anything more than keeping pace with the car." It further described the use of the vehicle as "incidental."

The People argued that Perez became armed with the vehicle for purposes of the statute, "[t]he moment that Mr. Perez chose to use the vehicle as a weapon as a means of his assault …." The trial court stated, in reviewing Perez's file, that he was never

charged with assault with a deadly weapon.**4** The People explained that, at the time Perez committed his crime, "it would have had very little meaning to file an assault with a deadly weapon." The trial court acknowledged that it had previously ruled in earlier cases that, "if there are facts that support use of a deadly weapon, even though they are not charged, and there is not a conviction, the person is still excluded from [resentencing] reconsideration .…"

The court then focused on the difference between a defendant who "used" a firearm or deadly weapon and a defendant who "was armed" with a firearm or deadly weapon. The People agreed with the trial court that, when Perez was sitting in his vehicle and the vehicle was not moving, the vehicle was not a weapon. The trial court explained that, had Perez had a knife in a sheath under his shirt at the time, he would find him ineligible.

The People continued, arguing that when Sanchez put his arm into the vehicle, Perez had an "election" to make: (1) to leave the vehicle as a vehicle by asking Sanchez to remove his arm from the vehicle, turn off the vehicle and resolve the issue; or (2) to use the vehicle as the mechanism of the assault, which would convert the vehicle into a weapon. According to the People, Perez chose the second option. As argued by the People, Perez was armed with a deadly weapon because "use" encompasses "armed," whereas "armed" does not encompass "use."

In response, the trial court read from an order it had issued in earlier resentencing hearings, explaining its understanding of the rationale behind Proposition 36, which stated that it did not think the voters of Proposition 36 "in any way were being told at that

---

**4** I note the jury was instructed only on the theory of "by means of force likely to produce great bodily injury." (CALJIC No. 9.02) I take judicial notice of the record in the appeal of the underlying offense (*People v. Perez*, case No. F023703) and also note that the prosecutor did not argue at trial that the use of the vehicle constituted use of a deadly weapon during the assault.

6.

point, 'if an individual uses something that is not in and of itself a … deadly weapon, that they would not be eligible.'" Following that line of reasoning, the trial court posed a hypothetical, asking the People what their argument would be if the passenger had gotten into the vehicle with the anti-theft device, Sanchez approached the vehicle and said "[d]on't leave," Perez grabbed the anti-theft device, throws it at Sanchez and drove away. Under the People's argument, the trial court reasoned Perez would have converted the anti-theft device, which is not inherently a deadly weapon, into the use of a deadly weapon, making him ineligible for resentencing.

The People made the distinction between someone releasing a stolen item and giving it back, and throwing the item and hitting the victim in the skull or attempting to hit the victim with the item. The latter example, argued by the People, "convert[s] the Club into exactly that, a club, and it was being used then as an instrument for the assault and was a dangerous or deadly weapon."

With that, the trial court then issued its ruling, stating:

> "Okay. I understand your position. I understand your argument.… [I]t is … very well-reasoned.… I think your argument is clear, if you want to take this further, the fact [is] that the Court is going to deny it. I am going to finalize the order. For that purpose, … *I am finding that the defendant is not ineligible to be resentenced, due to the method in which the motor vehicle was used in this offense.* So I have tried to give you as clear language as I can." (Italics added.)

*Analysis*

The trial court reviewed and weighed the facts, including the credibility of the estimated speeds and length of time for the incident[5], and determined, based on *its review*

---

[5]  As an aside, I take judicial notice of the fact that the world record for the 100-meter sprint is 9.58 seconds, a rate of 23.35 miles per hour. As such, the speed suggested by the victim's testimony seems implausible and provides additional support for the trial court's implied credibility findings. (Evid. Code, § 452, subd. (h); *In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1043 ["A trier of fact is free to disbelieve a witness, even one uncontradicted, if there is any rational ground for doing so."].)

7.

*and interpretation* of the facts, that the method used by Perez in maneuvering his car to depart the scene did not convert an object otherwise not inherently a deadly weapon, into one. Utilizing this factual determination, Judge Conklin reached the legal conclusion that Perez was not armed with, or use, a deadly weapon and was therefore eligible for resentencing. This determination was not made because of any misunderstanding of Proposition 36. Based on the record, and the trial court's comments, he clearly understood the mandates of Proposition 36 and properly applied them to the facts, as he interpreted them, to reach his decision. The record supports the trial court's determination of eligibility, based on the method the vehicle was used in the offense Perez was convicted of. The trial court did not, contrary to the majority's assertion (maj. opn. *ante,* at pp. 14-15, fn. 14), contradict the jury's verdict. It simply made factual findings that went beyond those made by the jury.

While I agree that an object not inherently deadly may be made deadly by its use and all other factors relevant to the issue, the factual determinations made by the trial court in this case fail to support this legal conclusion. Examples of vehicles used as deadly weapons are cited by the majority in section II of the Discussion, but are clearly much more egregious than the facts of this case, especially as interpreted by the trial court.

As a further example, in *People v. Claborn* (1964) 224 Cal.App.2d 38, a vehicle was found to be a deadly weapon within the meaning of a section 245 assault when the defendant, upset by a family dispute, got into his vehicle and, upon seeing an approaching police car, swerved and aimed his vehicle directly at the officer's car, causing a head-on collision. The defendant then got out of his vehicle and shouted, "'You son-of-a bitch, I didn't kill you this way, but I will kill you now,'" and physically attacked the officer. (*People v. Claborn, supra,* at p. 41.)

In determining whether a defendant is ineligible for resentencing under the Act, a trial court examines the "conduct that occurs during the commission of an offense."

8.

(*People v. Bradford, supra,* 227 Cal.App.4th at p. 1333.) Here, the record does not show Perez sped away with Sanchez's arm trapped in the car; he did not ram him with his vehicle, nor did he aim for him while driving. Instead, the facts contained in the record, as interpreted and cited by the trial court, were that Perez assaulted Sanchez when, while he was in the driver's seat of the vehicle, Sanchez reached into the passenger window in an attempt to retrieve the anti-theft device, the passenger grabbed Sanchez's arm and Perez then drove the vehicle slowly in reverse, to effect a getaway, while the passenger held onto Sanchez. Sanchez implored Perez to stop the vehicle as it continued to move in reverse. Sanchez was dragged by the movement of the vehicle and had to run to keep his balance. Perez then put the vehicle in drive and the vehicle moved forward. Sanchez was able to pull his arm free. Sanchez received no injuries other than a few scrapes. While Sanchez estimated the Blazer was going between 10 and 20 miles per hour and that the entire incident took about a minute, common sense dictates otherwise.

Perez's section 245, subdivision (a)(1) conviction was based on an assault by any means of force likely to produce great bodily injury, and does not come within section 1192.7, subdivision (c)(23) use of a deadly weapon exclusion making him ineligible for resentencing. (*People v. Williams* (1990) 222 Cal.App.3d 911, 914.) Nor does it come within the "armed with a deadly weapon" exclusions pursuant to section 667, subdivision (e)(2)(C)(iii) and section 1170.12, subdivision (c)(2)(C)(iii), as referenced in section 1170.126, subdivision (e)(2).

Substantial evidence supports the trial court's determination that Perez's use of the vehicle was not a deadly weapon within the meaning of the use of a deadly weapon exclusions and, thus, he was eligible for a recall of his life sentence and for resentencing under the Act.

_____
FRANSON, J.

9.