Filed 4/20/17

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C077882 |
| Plaintiff and Respondent, | (Super. Ct. No. 00F00630) |
| v. | |
| EMIGDIO VALDEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Robert Hight, Judge.  Affirmed.

Gregory R. Ellis, Retained Counsel for Defendant and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez, Caely E. Fallini, Jaime A. Scheidegger, Deputy Attorneys General, for Plaintiff and Respondent.

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts II., III., and IV.C. of the Discussion.

1

In 2001, defendant was convicted of possession of a sharp instrument in prison (Pen. Code, § 4502, subd. (a))[1] and assault by an inmate by means likely to cause great bodily injury (§ 4501). The trial court found true three prior strike allegations. (§§ 667, subds. (b)-(i), 1170.12.) The trial court sentenced defendant to consecutive terms of 25 years to life on each count. In an unpublished opinion, this court affirmed the judgment. (*People v. Valdez* (May 13, 2003, C038924) [nonpub. opn.] slip opn. at pp. 1-11 (Slip Opn.).)

Defendant appeals from the trial court's denial of his petition for recall of sentence under the Three Strikes Reform Act of 2012 (enacted by Prop. 36, as approved by voters, Gen. Elec. (Nov. 6, 2012); §§ 667, 1170.12, 1170.126 (Proposition 36 or the Act)). As to each conviction, defendant asserts that: (1) the trial court was not authorized to make findings of fact and the People were required to plead and prove any disqualifying facts in the prosecution of his commitment offense; (2) substantial evidence did not support the trial court's determinations regarding his ineligibility; and (3) the trial court employed the wrong standard of proof, in that it should have applied the "clear and convincing evidence" standard rather than the "preponderance of the evidence" standard. Defendant also asserts that, if we conclude that he is eligible for resentencing on one conviction but ineligible on the other, he should be resentenced on the eligible offense.

In the published part of this opinion we conclude there was substantial evidence supporting the trial court's determination that defendant was "armed" with the sharp instrument in prison. Defendant had the weapon available for use while he possessed it in his cell and the fact that the weapon was seized from his cell by correctional officers while defendant was away taking a shower does not make defendant eligible for resentencing under Proposition 36. Possession of a weapon can be a continuing offense.

---

[1] Further undesignated statutory references are to the Penal Code in effect at the relevant times.

Consequently, a person is armed with a weapon for purposes of the Proposition 36 resentencing exception if the evidence from the record of conviction establishes that he or she was present with the weapon and had it available for use *at any time* he or she had actual or constructive possession of it within the time period for which the defendant was charged and convicted.

In the unpublished parts of this opinion, we discuss and reject defendant's other contentions.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### Current Convictions[2]

**Possession of a Sharp Instrument in Prison (§ 4502)**

"In December 1998, Correctional Officer Kevin Keene was working as a floor officer in the administrative segregation section of 'six block' of the California State Prison, Sacramento. While defendant and codefendant Jose Alberto Dubon were away taking showers, Keene conducted a routine search of their cell. The cell had two bunks and a toilet on the right-hand side and upper and lower cubicles on the left-hand side.

---

[2] The factual background relating to defendant's underlying convictions is derived from this court's unpublished opinion affirming the judgment. (Slip Opn., *supra*, at pp. 1-11; see *People v. Guilford* (2014) 228 Cal.App.4th 651, 660-661 (*Guilford*) [prior appellate opinion admissible to prove ineligibility in section 1170.126 proceedings].) Defendant moved to augment the record on appeal to include the entire record in his appeal from the underlying convictions and we treated that motion as a motion to incorporate by reference that record and granted the motion. Defendant relies upon facts from testimony in the trial transcript in his appellate briefing. Although defendant did not present the transcript from his trial to the trial court in connection with his petition for resentencing, we have considered the cited testimony as well as other testimony in the trial transcript as if he had. (See *People v. Blakely* (2014) 225 Cal.App.4th 1042, 1063 (*Blakely*) [the trial court may examine relevant, reliable, admissible portions of the record of conviction to determine the existence or nonexistence of disqualifying factors].) We discuss the other testimony from the trial transcript in our discussion, *post*.

3

"In the upper cubicle, Keene found a long stiff straight object wrapped in plastic. When he unwrapped it, Keene saw that the object was an 'altered toothbrush with razor melted' into the handle, 'with cardboard cover piece, . . . two pieces of clear cellophane plastic.' Keene confiscated the object, put it into evidence, and notified the sergeant of his discovery. No inmates other than defendant and Dubon would have been allowed in their cell.

"Keene testified that inmates in administrative segregation are not allowed to have disposable razors or sharp metal objects. Inmates in the general population are allowed to have razors but are not allowed to alter them or remove them from their plastic casings. . . . Keene was not sure which inmate ordinarily used the upper cubicle." (Slip Opn., *supra*, at pp. 2-3, fn. omitted.) We set forth additional facts regarding this offense in our discussion, *post*.

**Assault by Inmate by Means Likely to Cause Great Bodily Injury (§ 4501)**

"Several months after the incident in count three, defendant, Dubon, and two other inmates were seen assaulting a newer inmate. Defendant struck the victim from the back at about the same time that Dubon struck him in the front. Defendant and Dubon kicked the victim with 'full force kicks.' Both men ignored Correctional Officer Ernest Johnson's order to stop fighting and were undeterred when he fired a special gun that shot rubber grommets. When Johnson resorted to tear gas, the inmates dispersed. At that point, the victim was on the ground and was not moving. He later regained consciousness and tried to stand but fell down a couple of times. He suffered multiple injuries to his face and head, including a large hematoma to his right forehead, an open contusion on his right forehead, a bloody nose, multiple bruising to his upper face, blood in his mouth, a shoe imprint on the left side of his face, and abrasions on both knees and elbows." (Slip Opn., *supra*, at pp. 3-4.)

4

## Petition for Resentencing

In 2014, defendant filed a petition for recall of his sentence pursuant to section 1170.126 which is part of the Act. Defendant asserted that, under section 1170.126, subdivision (e)(1), his convictions of possession of a sharp instrument while in prison (§ 4502, subd. (a)) and assault by a prisoner by means of force likely to produce great bodily injury (§ 4501) were neither serious felonies within the meaning of section 1192.7, nor violent felonies within the meaning of section 667.5, and therefore these convictions did not render him ineligible for resentencing under the Act. Defendant also asserted that, in violating sections 4501 and 4502, subdivision (a), he was not armed with a firearm or deadly weapon, did not use a firearm or deadly weapon, and he did not intend to cause great bodily injury to another person within the meaning of section 667, subdivision (e)(2)(C)(iii), and therefore he was not ineligible for resentencing under the Act. (§ 1170.126, subd. (e)(2).) Defendant further asserted that these convictions did not otherwise render him ineligible for relief. Thus, according to defendant, he satisfied all of the criteria for resentencing under the Act, and requested that the trial court resentence him as a second strike offender.

## Trial Court's Denial of Petition

The trial court rejected each of defendant's contentions and denied the petition. We discuss *post* the court's factual findings concerning each conviction and its determination of resentencing ineligibility based on those findings.

The trial court also rejected defendant's contention that, if it were to make findings of fact relevant to issues, it would violate the mandate of *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435] that findings of fact that may result in an increase in punishment must be made by a jury beyond a reasonable doubt. The court ruled that *Apprendi* does not apply to section 1170.126 resentencing proceedings because resentencing pursuant to that section would constitute a downward departure from a

5

previously imposed sentence, and there is no requirement that disqualifying factors must have previously been pleaded and proved to a jury beyond a reasonable doubt.

The trial court also ruled that its conclusion as to either conviction rendered defendant ineligible for resentencing under the Act. In this regard, the trial court followed those cases which had concluded that a defendant is ineligible for resentencing under the Act if *any* of the defendant's current convictions render him or her ineligible, although the court noted that the issue was pending before our high court at the time.[3]

Accordingly, the trial court denied defendant's petition for resentencing.

## DISCUSSION

## I. The Act

"Prior to its amendment by the Act, the Three Strikes law required that a defendant who had two or more prior convictions of violent or serious felonies receive a third strike sentence of a minimum of 25 years to life for any current felony conviction, even if the current offense was neither serious nor violent. [Citations.] The Act amended the Three Strikes law with respect to defendants whose current conviction is for a felony that is neither serious nor violent. In that circumstance, unless an exception applies, the defendant is to receive a second strike sentence of twice the term otherwise provided for the current felony, pursuant to the provisions that apply when a defendant has one prior conviction for a serious or violent felony." (*Johnson, supra*, 61 Cal.4th at pp. 680-681.)

---

[3] In *People v. Johnson* (2015) 61 Cal.4th 674 (*Johnson*), decided after the trial court's determination here, our high court concluded that "the Act requires an inmate's eligibility for resentencing . . . be evaluated on a count-by-count basis," and that "resentencing is allowed with respect to a count that is neither serious nor violent, despite the presence of another count that is serious or violent." (*Johnson*, at pp. 679, 688, 694-695.) Thus, our high court rejected the approach adopted by the trial court here that a single ineligible conviction rendered the defendant ineligible for resentencing under the Act on other convictions. In any event, as we discuss *post*, *Johnson* is of no moment because defendant is ineligible for resentencing on both convictions.

6

"The Act's exceptions to the new sentencing provisions relate to a defendant's current offense and prior offenses." (*Johnson, supra*, 61 Cal.4th at p. 681.) These exceptions are set forth in sections 667, subdivision (e)(2)(C), and 1170.12, subdivision (c)(2)(C). (*Johnson*, at p. 681.)

The Act addressed both prospective sentencing and retrospective resentencing. This case involves retrospective resentencing. "In addition to reducing the sentence to be imposed for some third strike felonies that are neither violent nor serious, the Act provides a procedure by which some prisoners already serving third strike sentences may seek resentencing in accordance with the new sentencing rules. [Citation.] 'An inmate is eligible for resentencing if . . . . [¶] . . . [t]he inmate is serving an indeterminate term of life imprisonment imposed pursuant to [the Three Strikes law] for a conviction of a felony or felonies that are not defined as serious and/or violent . . . .' [Citation.] Like a defendant who is being sentenced under the new provisions, an inmate is disqualified from resentencing if any of the exceptions set forth in section 667, subdivision (e)(2)(C) and section 1170.12, subdivision (c)(2)(C) are present." (*Johnson, supra*, 61 Cal.4th at p. 682.)

The specific exceptions applicable in this case are: "[*d*]*uring* the commission of the current offense, the defendant . . . was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (§ 667, subd. (c)(2)(C)(iii); 1170.12, subd. (c)(2)(C)(iii), italics added.)

## II. Pleading and Proof Requirement

Defendant asserts that the People were required to plead and prove disqualifying facts at trial on the current convictions, and that a court considering a petition under the Act cannot make new findings of fact resulting in the denial of the petition. We disagree.

As this court said in *People v. Guilford* (2014) 228 Cal.App.4th 651 (*Guilford*): "Because the electorate required pleading and proof of these disqualifying facts in the prospective part of the Act, but not the retrospective part, we presume the intention was

7

to dispense with a pleading and proof requirement in the latter case." (*Guilford*, at p. 657.) Contrary to defendant's contention, the fact that the resentencing portion of the Act cross-references the prospective portions does not necessarily lead to the conclusion that the electorate intended to impose a pleading and proof requirement for resentencing. In many cases, the relevant factors would not have been adjudicated in the current case, resulting in undermining one purpose of Proposition 36—to preclude dangerous persons from the recall provision. (*Guilford*, at p. 658.) Rather, it is appropriate in considering a recall petition for the trial court to consider the facts of the crime, as shown by the record, in making a determination as to whether the defendant is ineligible. (*Id.* at p. 659.) Thus, as defendant acknowledges, this court has agreed with the conclusion that "[t]he requirement of pleading and proof for prospective application of the Act, and the absence of such requirement for retrospective application, indicates that pleading and proof is not a requirement for the latter." (*Guilford*, at p. 659.)

Recently, the Court of Appeal for the Second Appellate District, Division Two, addressed a defendant's argument that the trial court considering his Proposition 36 petition "was not permitted 'to make a brand new factual finding of intent' and could not 'make new findings that went beyond the "nature or basis" of the conviction.' " (*People v. Newman* (2016) 2 Cal.App.5th 718, 723 (*Newman*), review granted November 22, 2016, S237491.) The *Newman* court clarified: "The gist of [the defendant's] claim of error is unless the disqualifying factor, e.g., 'intent to cause great bodily injury,' is an element of the current crime or a sentence enhancement allegation found true by the jury, the court is not empowered to find such factor exists." (*Ibid.*) The *Newman* court disagreed. (*Ibid.*) The court stated that, unlike the determination of the defendant's guilt or innocence of the underlying charges, "the existence of a disqualifying factor that would render a defendant ineligible for resentencing under Proposition 36, which would lessen his punishment if he were eligible, is a determination solely within the province of the Proposition 36 court to make without regard to any factual finding by the trier of

fact." (*Newman*, at p. 724.) "[A] Proposition 36 court may determine whether one or more of these disqualifying factors exists independent of the elements of the current offense and any attendant sentence enhancement allegation." (*Newman*, at p. 726.)

The court in *Newman* observed that there was no requirement on the face of Proposition 36 that disqualifying factors must be an element of the crimes of conviction, or that they must be pled and proved to the trier of fact. (*Newman, supra*, 2 Cal.App.5th at p. 724.) The court stated: "Its plain and clear language reflects a contrary intent. Subdivision (f) of section 1170.126 expressly provides: 'Upon receiving a petition for recall of sentence under this section, *the court shall determine* whether the petitioner satisfies the criteria in subdivision (e).' " (*Newman*, at p. 724.) Additionally, the *Newman* court held that the disqualifying factors were not required to be determined by a jury because they do not have the effect of increasing punishment. (*Ibid*.) On the contrary, Proposition 36 has the effect of decreasing a defendant's punishment, and therefore it constituted " ' "an act of lenity." ' " (*Newman*, at p. 724.) As such, the *Newman* court concluded *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435] and the Sixth Amendment right to a jury trial were not implicated. (*Newman*, at p. 724.)

"[T]he Proposition 36 court is authorized to make its factual findings regarding a disqualifying factor based on the record of conviction." (*Newman, supra*, 2 Cal.App.5th at p. 725.) " '[A] . . . court determining eligibility for resentencing under the Act is not limited to a consideration of the elements of the current offense and the evidence that was presented at the trial (or plea proceedings) at which the defendant was convicted. Rather, the court may examine relevant, reliable, admissible portions of the record of conviction to determine the existence or nonexistence of disqualifying factors. [Citation.] This is consistent with voters' intent.' " (*Newman*, at p. 726, quoting *Blakely, supra*, 225 Cal.App.4th at p. 1063.)

More recently, the Fifth Appellate District agreed with *Newman* on this point. "Simply put, the trial court takes the facts from the record of conviction and determines,

9

from its interpretation of those facts, whether a petitioner is eligible for resentencing." (*People v. Perez* (2016) 3 Cal.App.5th 812, 832-833 (*Perez*), review granted Jan. 11, 2017, S238354.)

We agree with the analysis in *Newman* and *Perez* and adopt it as our own. Thus, we reject defendant's contentions that the People had the burden of pleading and proving at trial all disqualifying facts and that the trial court was not authorized to make findings of fact.

### III.    Applicable Standard of Proof

Defendant asserts that, even if the trial court had the authority to make new findings of fact, and even if there was substantial evidence to support its findings, the trial court should have employed the "clear and convincing evidence" standard of proof rather than the "preponderance of the evidence" standard. In making this assertion, defendant relies on a Ninth Circuit Court of Appeals case,[4] as well as a concurring opinion[5] from this court.[6] The court in *Newman* rejected this contention (*Newman, supra*, 2 Cal.App.5th at p. 728), and so do we.

As noted by the *Newman* court:  "To date, no reviewing court has embraced the clear and convincing evidence standard as the standard of proof applicable to a Proposition 36 resentencing disability finding. Rather, the battle lines have been drawn with beyond a reasonable doubt, on one side, and preponderance of the evidence, on the other. The published appellate court opinions espousing a standard of proof thus far have all come down on the side of preponderance of the evidence, except for one, [*People v.*

---

[4] *United States v. Pineda-Doval* (9th Cir. 2010) 614 F.3d 1019.

[5] *People v. Bradford* (2014) 227 Cal.App.4th 1322, 1344-1351 (conc. opn. of Raye, P.J.).

[6] While relying on these opinions in advancing his argument, defendant correctly acknowledges that they are not binding authority on this court.

*Arevalo* (2016) 244 Cal.App.4th 836 (*Arevalo*)], in which the court embraced the beyond a reasonable doubt standard of proof. We decline to follow *Arevalo* and conclude the appropriate standard of proof is preponderance of the evidence." (*Newman, supra*, 2 Cal.App.5th at p. 728.) In our view, the reasoning in *Newman* is persuasive. (*Id*. at pp. 727-732; accord *Perez, supra*, 3 Cal.App.5th at p. 833; *People v. Frierson* (2016) 1 Cal.App.5th 788 (*Frierson*), review granted Oct. 19, 2016, S236728; *People v. Osuna* (2014) 225 Cal.App.4th 1020, 1040.)[7] Accordingly, we agree that the preponderance of the evidence is the appropriate and applicable standard of proof.[8] Thus, contrary to defendant's contention, we conclude that the trial court employed the proper standard of proof.

### IV. Sufficiency of the Evidence Supporting the Ineligibility Determinations
### A. Standard of Review

We review the factual basis for the trial court's finding of resentencing ineligibility under the substantial evidence test. We review the whole record in a light most favorable to the order to determine whether it contains substantial evidence, i.e., evidence that is credible and of solid value, from which a rational trier of fact could find ineligibility by a preponderance of the evidence. (See *Guilford, supra*, 228 Cal.App.4th at p. 661 [applying the substantial evidence test to a determination of resentence ineligibility under the Act]; accord, *People v. Perez* (2016) 3 Cal.App.5th 812, 833,

---

[7] The *Newman* court addressed at length both the statutory standard of proof and the constitutionally required standard of proof, concluding that proof by a preponderance of the evidence was prescribed as to both.

[8] This issue is now before the California Supreme Court. Our high court has granted review in *Newman, supra*, 2 Cal.App.5th 718, and *Frierson, supra*, 1 Cal.App.5th 788. In granting review in *Frierson*, our high court stated that the issue to be briefed and argued was "[w]hat is the standard of proof for a finding of ineligibility for resentencing under Proposition 36."

11

review granted Jan. 11, 2017, S238354; *People v. Newman* (2016) 2 Cal.App.4th 718, 727 (*Newman*), review granted Nov. 22, 2016, S237491.)

**B. Possession of a Sharp Instrument in Prison - Armed with a Deadly Weapon**

Defendant asserts that the trial court's determination that he was armed with a deadly weapon when he violated section 4502, possession of a sharp instrument in prison,[9] was not supported by substantial evidence. We disagree.

**1. The Trial Court's Ruling**

The trial court found that defendant was armed with a deadly weapon within the meaning of section 667, subdivision (e)(2)(C)(iii). The court stated that, in this context, to be " 'armed with a deadly weapon' " means that a person has "the deadly weapon available for use, either offensively or defensively." In concluding that the circumstances here satisfied this requirement, the trial court stated: "Here, defendant . . . and [his] cellmate . . . were only gone briefly from their cell, to take a shower; otherwise, the two and only those two spent most of their time in that cell. As the possession was ongoing, and defendant . . . most of the time was present in the cell and so near to the weapon as to have it available to him offensively or defensively during the times of his possession, he clearly was 'armed' with the deadly weapon when he was committing the offense." Accordingly, the court concluded that defendant was ineligible for resentencing on this conviction under the Act.

**2. Analysis**

"A defendant is *armed* if the defendant has the specified weapon available for use, either offensively or defensively." (*People v. Bland* (1995) 10 Cal.4th 991, 997 (*Bland*).)

---

[9] Section 4502, subdivision (a), provides in pertinent part: "Every person who, while at or confined in any penal institution, while being conveyed to or from any penal institution, or while under the custody of officials, officers, or employees of any penal institution, possesses . . . [a] sharp instrument . . . is guilty of a felony."

" ' "[I]t is the availability—the ready access—of the weapon that constitutes arming." ' " (*People v. White* (2014) 223 Cal.App.4th 512, 524 (*M. White*), quoting *Bland*, at p. 997, & *People v. Mendival* (1992) 2 Cal.App.4th 562, 574.)

In *Bland, supra*, 10 Cal.4th 991, our high court described the issue presented in the case as follows: "is a defendant convicted of a possessory drug offense subject to this 'arming' enhancement when the defendant possesses both drugs and a gun, and keeps them together, *but is not present when the police seize them from the defendant's house*?" (*Id*. at p. 995, italics added.)  Police investigating the defendant's possible involvement in the theft of auto parts searched his house and found rock cocaine in his bedroom closet. (*Ibid*.)  Under the bed, they found an assault rifle. (*Ibid*.)  At the time of the search, the defendant was in custody inside a police vehicle parked outside of his house. (*Ibid*.)  The opinion does not make note of specifically where defendant was located prior to being placed in the patrol vehicle.  The Court of Appeal affirmed the underlying convictions, but reversed the three-year arming enhancement, concluding that the defendant was not armed because he was outside of the house when the weapon was found. (*Id*. at p. 996.)

In reversing the Court of Appeal's decision, the California Supreme Court observed that, by focusing on the defendant's proximity to the weapon at the time the police found it, the Court of Appeal erred because its temporal focus was too narrow. (*Bland, supra*, 10 Cal.4th at p. 996.)  Our high court explained: "[W]hether defendant was 'armed in the commission' of the continuing offense of drug possession—*it is immaterial whether defendant was present when police seized the assault rifle together with the cache of crack cocaine*, so long as he had the firearm *available for use* in furtherance of the drug offense *at any time during his possession* of the drugs.  From evidence that the assault weapon was kept in [the] defendant's bedroom near the drugs, the jury could reasonably infer that, *at some point* during the felonious drug possession, defendant was physically present with both the drugs and the weapon, giving him ready access to the assault rifle to aid his commission of the drug offense." (*Id*. at p. 1000,

13

italics added.)  In its reasoning, the court emphasized the continuing nature of drug possession.  (*Id*. at pp. 999-1000, 1002, 1004.)  To summarize, the court wrote:  "[W]hen the prosecution has proved a charge of felony drug possession, and the evidence at trial shows that a firearm was found in close proximity to the illegal drugs in a place frequented by the defendant, a jury may reasonably infer (1) that the defendant knew of the firearm's presence, (2) that its presence together with the drugs was not accidental or coincidental, and (3) that, *at some point during the* period of illegal drug *possession*, *the defendant was present with both the drugs and the firearm and thus that the firearm was available for the defendant to put to immediate use* to aid in the drug possession.  These reasonable inferences, if not refuted by defense evidence, are sufficient to warrant a determination that the defendant was 'armed with a firearm in the commission' of a felony within the meaning of section 12022."  (*Bland*, at pp. 1002-1003, fn. omitted, italics added.)  Thus, in the context of ongoing or continuous possession, our high court does not require the weapon be readily "available" or available for "immediate use" at the very moment the weapon is found.

Here the possessory crime is the possession of a sharp instrument in prison.  Possessory offenses, such as drug possession or possession of a deadly weapon, are " 'continuing offense[s], one[s] that extend[] through time" and create criminal liability "throughout the entire time the defendant asserts dominion and control."  (*Bland, supra*, 10 Cal.4th at p. 999.)  Thus, even if it is true that the weapon was not in defendant's actual physical possession at the precise time it was discovered, this does not necessarily undermine a finding that he was armed with the deadly weapon at other relevant times so as to support the trial court's determination.  The instant case, where the weapon is stored in an inmate's cell, is an example of continuing or ongoing possession.  Indeed, the discovery of the weapon in defendant's cell presents a stronger case for a finding that he was armed than the circumstances in *Bland* because defendant, an administrative segregation prisoner, spent the vast majority of his time in the cell where the weapon was

14

discovered, whereas it is not clear how much time the defendant in *Bland* spent in his bedroom where police discovered the assault rifle.

Moreover, similar to the situation in *Bland*, there is a safety risk here. The *Bland* court explained that "[t]he crime scene in a drug possession case is the place where the defendant keeps his or her cache of illegal drugs. A firearm kept near the drugs creates an ongoing risk of serious injury or death from use of the weapon to protect the defendant during a drug sale, to guard against theft of the drugs, or to ward off police. Yet defendant would have us ignore the continuing nature of that risk." (*Bland, supra*, 10 Cal.4th at pp. 1001-1002.) Like in *Bland*, we should not ignore the continuing nature of the safety risk here. (*Id*. at p. 1002.) Possession of a weapon by a state prisoner creates a continuing risk of serious injury or death to other inmates and staff and jeopardizes the security of the facility. Thus, incarcerated felons who possess such weapons are particularly dangerous. And as we shall discuss *post*, the electorate was particularly concerned with keeping dangerous felons incarcerated when it enacted Proposition 36.

*People v. Delgadillo* (2005) 132 Cal.App.4th 1570 (*Delgadillo*), is another example of the situation where, even though the defendant was not present when a weapon was found, the court held that he was armed because the weapon had earlier been available for use in furtherance of the drug offenses during the commission of those crimes. In *Delgadillo*, law enforcement followed the defendant from his house and stopped him some distance away on a freeway. (*Id*. at p. 1572.) Law enforcement then executed a search warrant at his house. Two guns were found in the headboard of the defendant's bed and methamphetamine, cash, and indicia of methamphetamine sale and manufacturing were found elsewhere inside the home and in a car parked outside. (*Id*. at p. 1573.) The *Delgadillo* court followed the *Bland* court's reasoning concerning the continuing nature of drug possession, noting "the crime of drug possession is 'a "continuing" offense, one that extends through time . . . [a]nd when, *at any time* during the commission of the felony drug possession, the defendant can resort to a firearm to

15

further that offense, the defendant satisfies the statutory language of being "armed with a firearm in the commission . . . of a felony." ' " (*Delgadillo*, at p. 1574, italics added.) Focusing the temporal analysis of arming on occasions prior to his arrest, the court held that the firearms were available for defendant to use offensively or defensively "*at any time* during the manufacturing process," even though that process took place over time and at different locations. (*Id*. at pp. 1574-1575, italics added.)

It is true that *Bland* and *Delgadillo* are "armed *in* the commission" cases and that the *Bland* court noted " '*in* the commission' " (italics added) means "*any time during and in furtherance of the felony*." (*Bland, supra*, 10 Cal.4th at p. 1001.) Because section 1170.126 requires only that the arming be "during" the commission of the crime, there is no facilitative nexus requirement as when the arming must also be in furtherance of a felony. (*People v. Hicks* (2014) 231 Cal.App.4th 275, 283-284 (*Hicks*) [crime of possession of firearm by a felon precludes section 1170.126 relief under the arming prohibition]; accord, *People v. White* (2016) 243 Cal.App.4th 1354, 1362-1363 (*T. White*) [same]; *People v. Osuna* (2014) 225 Cal.App.4th 1020, 1032 (*Osuna*) [same].)

In *Hicks*, a published case of this court, parole agents and police officers approaching an apartment complex looking for a parolee at large encountered the defendant and two companions. (*Hicks, supra*, 231 Cal.App.4th at p. 280.) After the defendant removed a clear plastic bag from his sweatpants and threw it away, officers frisked him and found five .380-caliber bullets. (*Ibid*.) Additionally, an officer retrieved the clear bag and discovered that it contained rock cocaine. (*Ibid*.) Officers proceeded to the apartment defendant and his companions were there to visit, and, in that apartment, they found a backpack containing a loaded .380-caliber handgun. (*Ibid*.) Two witnesses, who subsequently gave inconsistent testimony, told the police that the defendant had left the backpack in the apartment. (*Id*. at pp. 280-281.) This court affirmed the trial court's determination that the defendant was ineligible for resentencing because he was armed with a firearm when he committed the crime of being a felon in possession of a firearm.

16

(*Id.* at pp. 279-280.)  The *Hicks* court stated:  "unlike section 12022, which requires that a defendant be armed '*in* the commission of' a felony for additional punishment to be imposed . . . , the Act disqualifies an inmate from eligibility for lesser punishment if he or she was armed with a firearm '[*d*]*uring* the commission of' the current offense."  (*Hicks*, at pp. 283-284.)  "Thus, there must be a temporal nexus between the arming and the underlying felony, not a facilitative one.  The two are not the same."  (*Id.* at p. 284, citing *Bland, supra*, 10 Cal.4th at p. 1002.)  The *Hicks* court continued:  "Following this reasoning, *defendant was armed with a firearm during his possession of the gun*, but not 'in the commission' of his crime of possession.  There was no facilitative nexus; his having the firearm available for use did not further his illegal possession of it.  *There was*, however, *a temporal nexus*.  Since the Act uses the phrase '[d]uring the commission of the current offense,' and not 'in the commission of' the current offense [citations], and since at issue is not the imposition of additional punishment but rather eligibility for reduced punishment, we conclude the plain language of the Act disqualifies an inmate from resentencing if he or she was armed with a firearm during the unlawful possession of that firearm.  [¶]  Here, the trial court stated it found beyond a reasonable doubt that defendant was personally armed with the firearm he was convicted of possessing.  There was sufficient evidence to support this finding based on the initial statements of the two recanting witnesses . . . that it was defendant who had the backpack with the gun inside and put it in the tenant's apartment."  (*Hicks*, at p. 284.)

Similarly, here, defendant was armed with the deadly weapon *during* his commission of possession of a sharp instrument in prison.  Contrary to defendant's contention, the possession of the weapon need not facilitate another felony, e.g., drug possession or drug manufacturing.  We need only look to whether the inmate was armed *during* the possession of the weapon.  Further, we see no need to reconsider, as urged by defendant, this court's determination in *Hicks* that "there must be a temporal nexus between the arming and the underlying felony, not a facilitative one."  (*Hicks, supra*, 231

17

Cal.App.4th at p. 284.) As we have noted, other courts are in accord. (*T. White, supra*, 243 Cal.App.4th at pp. 1362-1363; *Osuna, supra*, 225 Cal.App.4th at p. 1032.) Additionally, on its facts, *Hicks* provides another example of the fact that a defendant need not be present with the weapon when it is discovered to be deemed "armed" within the meaning of the exception rendering a defendant ineligible for resentencing under the Act.

More recently, in *T. White, supra*, 243 Cal.App.4th 1354, a felon in possession of a firearm prosecution, the Fourth Appellate District, Division Three, observed that "a defendant is armed with a weapon even though it is not carried on his person, when he is aware it is hidden in a place readily accessible to him." (*Id*. at p. 1361.) This precisely describes the circumstance at issue here. Although the facts in *T. White* are different, in the instant case the weapon was hidden in a place that was readily accessible to defendant when he was nearby.

In *T. White*, a police officer spotted the defendant walking down the street carrying a fanny pack. (*T. White, supra*, 243 Cal.App.4th at p. 1358.) Because the defendant matched the general description of a suspect in an armed robbery, the officer drove his patrol car next to the defendant. (*Ibid*.) The defendant turned away and walked into the parking lot of a motel, and the officer followed. (*Ibid*.) The officer lost sight of the defendant but moments later, he saw the defendant walking along the second story corridor of the motel. (*Ibid*.) The officer got out of his car and asked the defendant to come speak with him and defendant came down the stairs toward the officer. (*Ibid*.) The officer noted the fanny pack appeared to be less full than it had appeared before. (*Ibid*.) Retracing the defendant's path, the officer found a loaded nine-millimeter semiautomatic pistol in a trash can. (*Ibid*.) A search of the fanny pack revealed two bullets of the same make and caliber as those in the gun. (*Ibid*.) The defendant testified at trial, denying that he had a firearm when he arrived at the hotel and denying that he placed a firearm in the trash can. (*Ibid*.) The defendant did admit, however, that he walked by the garbage can.

18

(*Ibid*.) He testified he had found the two bullets on the motel stairs and picked them up. (*Ibid*.)

On appeal from the denial of his Proposition 36 petition, the defendant in *T. White* contended that his case was different from the situation where the defendant is seen in actual possession and thus excluded under the arming exception.[10] (*T. White, supra*, 243 Cal.App.4th at pp. 1357, 1361.) Unlike that situation, according to the defendant, he could not be found to have been armed because the police never saw him discard the weapon in the trashcan or otherwise observed him in physical possession of it. (*Id*. at p. 1361.) Rejecting that contention, the Court of Appeal reasoned, "it [was] clear [the] defendant's conviction was based on either the inference he discarded the gun into the trash can on that occasion or he had placed it there *earlier*. Either way, his possession amounts to being armed." (*Id*. at p. 1357, italics added.) The court explained that the jury necessarily concluded that the defendant possessed the gun found in the trash can, and, in turn, that finding necessarily implied that the defendant was "at least aware it was hidden there." (*Id*. at p. 1361.) The Court of Appeal reasoned: "When [the] defendant was first approached by the police officer in the street, he turned directly into the motel, and assuming he did not have the gun in his fanny pack, he went straight for the trash can where he knew it was already hidden. And as he walked by that trash can—as he conceded he did—that gun was readily accessible to him. That qualifies [the] defendant as being 'armed.' As our Supreme Court has explained, ' "[i]t is the availability—the ready access—of the weapon that constitutes arming." ' " (*Id*. at pp. 1361-1362, quoting *Bland, supra*, 10 Cal.4th at p. 997.) The *T. White* court concluded: "So even if the jury

---

[10] Specifically, the defendant in *T. White* contended his case was distinguishable from *M. White, supra*, 223 Cal.App.4th 512, where the officers saw defendant carrying rolled up sweatpants with an object inside. After defendant threw these items into the back of his pickup truck, the officers recovered them and discovered the object in the sweatpants was a handgun. (*M. White*, at p. 520.)

believed [the] defendant's testimony that he did not bring the gun into the motel on the occasion in question, its finding that he had possession of the gun located in the trash can, combined with his admission he walked right by it immediately after the police officer drove alongside him, demonstrates he qualified as armed during that possession." (*T. White*, at p. 1362.)

Although the facts here are different, the circumstances are similar. The jury necessarily found that defendant possessed the altered toothbrush with the razor melted into the handle.[11] Prior to its discovery, this weapon was readily accessible to defendant when he was in his cell. As in *T. White, supra*, 243 Cal.App.4th 1354, the weapon was not discovered on defendant's person or the immediately surrounding area where the defendant was stopped. However, the evidence supports a finding that defendant was aware that the weapon was "hidden in a place readily accessible to him." (*Id*. at p. 1361.) We also note that both here and in *T. White*, the defendants were under control of law enforcement authorities in a different location when the weapons were discovered.

The case law thus teaches us not to limit the temporal focus for arming to the moment when the weapon was discovered; such a focus is too narrow. (*Bland, supra*, 10 Cal.4th at p. 996 [Court of Appeal erred by focusing too narrowly on the defendant's proximity to the assault weapon at the time police found the cocaine and the assault weapon in the defendant's bedroom].) Possession of a weapon, like drug possession, can be a continuing crime. Thus, when a weapon is available to a defendant to use offensively or defensively *at any time* during the actual or constructive possession of that

_____

[11] The dissent comments that "at some unwitnessed point in time [defendant] was *presumably* in the cell with the weapon." (Italics added.) In our view, this is not a matter subject to speculation and we need not *presume* this fact. The jury convicted defendant of possession of the weapon found in his cell while he was taking a shower, and this court rejected his claim of insufficient evidence of possession in his appeal from that conviction. (Slip Opn., *supra*, at pp. 4-6.)

20

weapon within the time period for which a defendant was charged, the defendant was armed. (See *Bland*, at p. 997.) The defendant need not be present at the moment when the weapon is discovered, nor must the weapon be immediately available for his or her use at that very moment.

Defendant relies on a hypothetical situation considered in *Osuna, supra*, 225 Cal.App.4th 1020, as supporting his position. In *Osuna*, an officer attempted to pull the defendant over after he sped through a school zone. (*Id*. at p. 1027.) When the defendant finally stopped and exited the car he was driving, he was holding a handgun. (*Ibid*.) The defendant fled and, approximately 20 minutes later, police arrested him as he exited a house within the perimeter established by police. (*Ibid*.) Police searched the house and located a handgun in the air conditioning duct and its missing magazine outside the home. (*Ibid*.) Police discovered a second magazine and ammunition in the vehicle the defendant had been driving. (*Ibid*.) The *Osuna* court, affirming the denial of the defendant's Proposition 36 petition, concluded that the defendant was disqualified from resentencing under the Act because he was armed with a firearm during the commission of the current firearm possession offense. (*Osuna*, at p. 1040.) The *Osuna* court stated: the "defendant was actually holding a handgun when he first got out of the car. Thus, factually he was 'armed with a firearm' within the meaning of the Act." (*Osuna*, at p. 1030.) In dicta, the *Osuna* court also wrote: "A firearm can be under a person's dominion and control without it being available for use. For example, suppose a parolee's residence (in which only he lives) is searched and a firearm is found next to his bed. The parolee is in possession of the firearm, because it is under his dominion and control. If he is not home at the time, however, he is not armed with the firearm, because it is not readily available to him for offensive or defensive use. Accordingly, possessing

21

a firearm does not necessarily constitute being armed with a firearm." (*Ibid*., fn. omitted.)[12]

The *Osuna* court did not discuss the reasoning in *Bland* or *Delgadillo*, cases with facts that closely approximated the facts in the hypothetical. As a result, it does not appear that the *Osuna* court considered the *Bland* court's observation that it is "immaterial" whether the defendant is present when the authorities find the weapon. (*Bland, supra*, 10 Cal.4th at p. 1000.) Even so, the *Osuna* hypothetical is inapt.[13] Here,

---

[12] This dicta was recently repeated in another case involving *actual* possession of a firearm by a felon. (*People v. Frutoz* (2017) 8 Cal.App.5th 171, 177.)

[13] We are aware that other courts have stated that mere possession of a weapon does not establish that the defendant was armed with the weapon because possession can be constructive as well as actual. (See *People v. Burnes* (2015) 242 Cal.App.4th 1452, 1458, citing *Blakely*, *supra*, 225 Cal.App.4th at p. 1057.) In *M. White*, *supra*, 223 Cal.App.4th 512, the court stated, "while the act of being armed with a firearm—that is, having ready access to a firearm [citation]—necessarily requires possession of the firearm, possession of a firearm does not necessarily require that the possessor be armed with it." (*Id*. at p. 524.) The *M. White* court posed a hypothetical example in dicta similar to the one in *Osuna* to illustrate its perception of when a person in constructive possession of a weapon would not be armed: "For example, a convicted felon may be found to be a felon in possession of a firearm if he or she knowingly kept a firearm in a locked offsite storage unit even though he or she had no ready access to the firearm and, thus, was not armed with it." (*M. White*, at p. 524.) None of these cases actually involved the specific situation where the defendant was not seen with the weapon and was not present when the weapon was discovered. Indeed, in *Burnes*, the issue before the court related to the improper use of a probation report to determine the circumstances of the defendant's possession, not the sufficiency of evidence establishing arming. (*Burnes*, at p. 1455.) No other source of facts establishing the underlying circumstances of the defendant's possession was considered by the trial court in *Burnes*. In *People v. Blakely* (2014) 225 Cal.App.4th 1322, the defendant actually fired the weapon and admitted actual possession of it for purposes of self-defense (*id.* at p. 1049), so not only was he excluded under the arming exception but also the personal use exception. In *M. White*, the defendant was also in actual physical possession of the weapon. (*M. White*, at pp. 524-525; see fn. 10, *ante*.) Constructive possession was not a theory of possession in these cases. More important, like *Osuna*, these courts did not consider our high court's observation in *Bland* that the defendant need not be present when the weapon is found so

defendant left his cell briefly to take a shower. When he left the cell, his possession was continuing. Moments before he went to the shower, he was in his cell and in either constructive or actual possession of the weapon. At a minimum, the weapon was readily accessible to him at that time and thus it was readily accessible during his possession of the weapon. Additionally, the showers are located "[r]ight in the middle of the . . . tier," with five cells to each side of each shower. Unlike the hypothetical parolee described in *Osuna* who was not home (*Osuna, supra*, 225 Cal.App.4th at p. 1030), defendant here was "home." He was simply in another part of his home, mere cell widths away from his cell taking a shower. And defendant would undoubtedly be returning to his cell directly following his shower. Had the correctional officers not discovered the weapon, it would have been readily accessible to him immediately upon his return from the showers.

Defendant's circumstances here are more analogous to those of the defendant in *People v. Elder* (2014) 227 Cal.App.4th 1308 (*Elder*). In *Elder*, a law enforcement task force executing a search warrant found the defendant outside the front door of his apartment. (*Id*. at p. 1317.) Inside the apartment, law enforcement found a gun on an entertainment center and another gun in an unlocked safe in the bedroom. (*Ibid*.) The

---

long as the evidence demonstrates he or she had the weapon available for use "at *any time* during [the] possession of the drugs." (*Bland, supra*, 10 Cal.4th at p. 1000, italics added.) In light of our high court's reasoning in *Bland*, the fact that a defendant is only in constructive possession as opposed to actual possession at the time the weapon is discovered does not mean he or she did not have the weapon available for use at some earlier point during the possession of that weapon. Having said that, we do not disagree that there could be scenarios where a person is in knowing constructive possession of a weapon, yet was never near it or even touched it so as to be deemed armed, e.g., where a third person places a weapon in a place over which the defendant has dominion and control, tells the defendant it is at that location, but the weapon is discovered before the defendant could go to that location.

23

*Elder* court concluded that the trial court properly determined that the defendant was ineligible for resentencing because he was armed with a firearm.  (*Ibid*.)[14]

In addition to *Elder*, defendant's circumstances here are similar to each of the following: the defendant in *Bland* who was in the police vehicle while the weapon and drugs were discovered inside of his house; the defendant in *Delgadillo* who was detained on a freeway while drugs and a firearm were found during the execution of a search warrant at his home; the defendant in *Hicks* who was detained outside the apartment he was there to visit, inside of which his backpack containing a gun was found; and the defendant who was detained by the police officer at the motel in *T. White* while the gun was found in a garbage can in an upstairs corridor where the defendant had been.  In each of these cases, the weapon was not discovered on the defendant's person or in his immediate presence and the authorities never saw the defendant in actual possession of the weapon.  Yet, there was sufficient evidence to reasonably infer that, at some point during the defendant's possession of the weapon, he was present with it and that it was readily accessible to him for his immediate use.

Defendant asserts he could not be armed, because in addition to being away from his cell, he was "under guard and possibly handcuffed" when the weapon was found.  Thus, according to defendant, the weapon was not readily available for offensive or defensive use.  But this was the case in each of the cases we have just mentioned.  Those defendants were also detained or in custody at the time the weapons were found.  We conclude defendant's supervised visit to the shower did not make him eligible for sentence reduction under the Act.  The arming exception still disqualifies him.  Where, as

---

**14**  However, in light of *Bland*, *Delgadillo*, *Hicks*, and *T. White*, we do not agree with the *Elder* court's seemingly inconsistent suggestion that a person could not be denied sentence reduction under the "armed" exception where the weapon "is under a defendant's dominion and control in a location not readily accessible to him *at the time of its discovery*."  (*Elder, supra*, 227 Cal.App.4th at pp. 1313-1314, italics added.)

here, the possessory offense is ongoing and defendant had the weapon available for use earlier, the arming exception makes him ineligible for resentencing under the Act. To conclude otherwise would mean that before he went to the shower, defendant was ineligible for sentence reduction; while he was in the shower, he was eligible for sentence reduction; and when he returned from the shower (had the weapon not been discovered), he was again ineligible for sentence reduction. It is difficult to accept the premise that it was the intent of the electorate to make defendant eligible or ineligible for sentence reduction depending on the fortuity of the weapon being found while he was taking a shower.

Nor should his eligibility turn on the fact that inmates in administrative segregation were not allowed to roam the cell block freely. Defendant's eligibility for Proposition 36 relief cannot conceivably turn on the fact that he was housed in administrative segregation and, therefore, because he was escorted to the shower rather than being free to enter and exit his cell with greater autonomy, he was not deemed to have had the weapon available for use. This analysis would lead to an absurd result: an inmate housed elsewhere in the prison, with the ability to enter and exit his cell more freely and to take showers with lesser supervision would be ineligible for Proposition 36 relief if a weapon were found in his cell while he was nearby taking a shower or elsewhere in the cellblock, but defendant would be eligible for relief because, due to the greater danger he posed to other inmates and corrections officers, he had to be restrained whenever he left his cell.

The dissent suggests the analysis in a *Bland* situation involving the possession of a weapon with drugs should be different than the analysis employed in a case involving a possession of a weapon charge. (Dis. opn. of Duarte, J., *post*, at p. 2.) According to the dissent, "[t]he key moment in time as well as in physical location for the 'armed' classification in the drug cases is the discovery of the drugs," and the result would be different if the weapon had been stored away from the drugs at the time when the drugs

25

were discovered. (*Ibid*.) We do not disagree. As we have noted, armed *in the commission* of a drug offense requires both a facilitative nexus as well as a temporal nexus. (*Hicks, supra*, 231 Cal.App.4th at pp. 283-284.) Consequently, if the firearm is stored away from the drugs, a facilitative nexus could not be established based solely on the concurrent possession of the weapon and drugs. But as *Bland* teaches, the defendant need not be present when the drugs and weapon are found to be deemed armed. (*Bland, supra*, 10 Cal.4th at p. 1000.) Moreover, in a weapon possession case where arming requires that the weapon be available for a defendant's use *during* the commission of the weapon possession, only a temporal nexus is required and that nexus has nothing to do with where the defendant was located when the weapon is discovered. The temporal nexus is the concurrence of the point in time when the defendant has possession of the weapon and it is available for use. Thus, the key point in time for purposes of determining whether a defendant will be deemed to have been "armed" in a case involving constructive possession is whatever point in time the defendant had constructive possession of the weapon and it was simultaneously available for use.

The dissent suggests that under our analysis, a defendant is "forever armed," but this temporal focus misses the mark. If a person commits a crime today and is not apprehended until some future point in time, that person is still subject to prosecution for the crime when he is apprehended (assuming charges are filed within the statute of limitations). That person is no less culpable for the offense just because he was not caught in the act and arrested at the time and place where the crime was committed. Similarly, where, as here, a defendant constructively possessed a weapon and simultaneously had it available for use offensively or defensively, he was armed at that point in time, and it does not matter that he was later detained in some place other than where the arming had previously taken place. He still had the weapon available for use at the earlier point in time. Thus, if he is charged with possession alleged to have taken place at that earlier time and convicted, he may also be deemed armed at that earlier time

26

for purposes of the arming exception, rendering him ineligible for resentencing under the Act.[15]

In our view, the conclusion we reach here is consistent with the voters' intent in enacting Proposition 36. The arguments expressed in support of Proposition 36 "reflect[ed] an intent to 'make the punishment fit the crime' and 'make room in prison for *dangerous felons*.' " (*Johnson, supra*, 61 Cal.4th at p. 686, quoting Voter Information Guide, Gen. Elec. (Nov. 6, 2012) argument in favor of Prop. 36, p. 52, italics added.) "In this same vein, the ballot materials related to Proposition 36 (and therefore the resentencing statute) reflect an intent to ' "keep violent felons off the street" ' and ' "prevent[] *dangerous criminals* from being released early." ' " (*People v. Caraballo* (2016) 246 Cal.App.4th 936, 940, quoting *Johnson*, at p. 686, italics added.) These aims would not be served by an interpretation of the statute requiring the narrow temporal focus of arming advanced by defendant, a focus that would make him eligible for sentence reduction simply because he was not present with the weapon when it was found, even though he had been present with it and it had been available for his use earlier. "[T]he plain purpose of these disqualifying factors is to serve as a prophylactic measure to further the goal of the Three Strikes law to protect society against recidivist criminals who commit violent and/or serious crimes. In enacting Proposition 36, the voters intended a third strike defendant who committed a current, nonviolent and nonserious crime would not be punished as severely as a third strike defendant whose current crime was violent and/or serious. Nonetheless, the voters also intended to exclude those defendants who committed the current nonviolent and nonserious crime *in a manner that potentially could result in violent and/or serious consequences, which intent is manifest in the triad of disqualifying factors*. As the court cogently reasoned in

---

[15] Defendant was charged with possession of the weapon "[o]n or about December 7, 1998," the same day when he left his cell to shower and the weapon was discovered.

27

[*Blakely, supra*, 225 Cal.App.4th 1042]: 'It is clear the electorate's intent was not to throw open the prison doors for *all* third strike offenders whose current convictions were not for serious or violent felonies, but only for those who were perceived as *nondangerous* or posing little or no risk to the public.' " (*Newman, supra*, 2 Cal.App.5th at pp. 724-725, first & third italics added.) Felons in possession of weapons and who have them readily available for use *at any time* during the possession are obviously dangerous, particularly in a custodial setting. We see nothing in the statute, the ballot arguments or any other source that suggests the voters intended dangerous felons to be eligible for sentence reduction if they were lucky enough to be arrested or detained at a location where they could not easily put their hands on the weapon, even though they had it available for use at some earlier point in time during their possession of it.

Based on the foregoing, we conclude that substantial evidence supported the trial court's determination that defendant was armed with a deadly weapon within the meaning of sections 667, subd. (e)(2)(C)(iii), and 1170.12, subd. (c)(2)(C)(iii), and that he was thus ineligible for resentencing on this conviction.

**C. Assault by Inmate by Means Likely to Cause Great Bodily Injury (§ 4501)**

Defendant also asserts that substantial evidence does not support the trial court's determination that, in committing the assault on another inmate in violation of section 4501,[16] he intended to cause great bodily injury. We disagree.

**1. The Trial Court's Findings**

The trial court concluded that this court's opinion on the appeal from the conviction clearly established the defendant intended to cause great bodily injury to the

_____

[16] Section 4501 provides: "Every person confined in a state prison of this state except one undergoing a life sentence who commits an assault upon the person of another with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury, shall be guilty of a felony and shall be imprisoned in the state prison for two, four, or six years to be served consecutively." (Stats. 1978, ch. 579, § 33.)

28

victim. Based on the opinion, the trial court noted that defendant "acted in concert with cellmate/codefendant Dubon and another inmate, in assaulting the victim; defendant was striking the victim from the back at about the same time that Dubon struck the victim in the front; defendant and Dubon kicked the victim with full force kicks; both ignored orders from officers to stop fighting as well as the firing of a special gun, and kept on with the assault; only after tear gas was set off did defendant and the others disperse, leaving the victim on the ground, not moving; the victim only later regained consciousness and tried to stand but fell down a couple of times; the victim had suffered multiple injuries to his face and head, including a large hematoma to his right forehead, an open contusion on his right forehead, a bloody nose, multiple bruising to his upper face, blood in his mouth, a shoe imprint on the left side of his face, and abrasions on both knees and elbows."

Based on these facts, the trial court stated that it was "easily inferable . . . that defendant intended to cause great bodily harm to the victim, by his participation and role in the assault, by the types of injuries inflicted on the victim, including one of the assailants stepping on the victim's face so hard as to cause a shoe imprint and the infliction of a large hematoma on the victim's head, and by defendant's continuing to inflict the injuries on the victim or enable his coparticipants to do so by not stopping the assault when officers attempted to have the assault come to an end." The court concluded, beyond a reasonable doubt, that a jury would have found that defendant acted with intent to cause great bodily injury during the commission of this offense, and, therefore, the court itself made such a finding. As a result, the court found defendant ineligible for resentencing pursuant to section 1170.126 because, " '[d]uring the commission of the current offense, the defendant . . . intended to cause great bodily injury to another person,' under the meaning of Penal Code §§ 667(e)(2)(C)(iii) and 1170.12(c)(2)(C)(iii)."

## 2. Analysis

A defendant is ineligible for, or disqualified from, resentencing if he or she "intended to cause great bodily injury to another person." (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).) Section 12022.7, subdivision (f), defines " 'great bodily injury' " as "a significant or substantial physical injury." "However, 'the injury need not be so grave as to cause the victim "permanent," "prolonged," or "protracted" bodily damage.' [Citation.] 'Proof that a victim's bodily injury is "great" . . . is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury.' " (*People v. Woods* (2015) 241 Cal.App.4th 461, 486.)

"The intent to inflict great bodily injury need not be proven by direct evidence. Such intent may be inferred or presumed. ' "It is black-letter law that a party is presumed to intend to do that which he voluntarily or willfully does in fact do and also presumed to intend the natural, probable and usual consequences of his own acts." ' " (*In re Sergio R.* (1991) 228 Cal.App.3d 588, 601; see *People v. Phillips* (1989) 208 Cal.App.3d 1120, 1124.)

We agree with the trial court's findings based on this court's opinion on defendant's original appeal. We also note from the trial transcript that a physician determined that the victim suffered left anterior and medial orbital wall factures, right maxillary sinus fractures, and a nasal fracture.

Based on the descriptions of defendant's participation in the assault, his continuation with the assault after corrections officers intervened, ceasing only when officers employed tear gas, and the extent of injuries inflicted on the victim, we conclude that substantial evidence supports the trial court's determination that, in committing the assault, defendant intended to inflict great bodily injury. (See *Newman, supra*, 2 Cal.App.5th at p. 727; *Guilford, supra*, 228 Cal.App.4th at p. 662.)

Contrary to defendant's contention, the fact that there was no finding of great bodily injury at trial does not undermine this determination. Defendant was convicted of assault by a prisoner by means of force likely to produce great bodily injury. (§ 4501.) There was no requirement that the People at trial prove the actual infliction of great bodily injury; the People were only required to prove, beyond a reasonable doubt, that the assault was committed "by any means of force likely to produce great bodily injury." (§ 4501; see fn. 16, *ante*.) And the Proposition 36 eligibility exception does not require that defendant *actually* inflict great bodily injury; rather the plain language of the statute requires only that defendant *intended to* cause such injury. (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii); see *Newman, supra,* 2 Cal.App.5th at p. 725 ["mere intent to cause great bodily injury" is required].) Moreover, as stated, *ante,* "the existence of a disqualifying factor that would render a defendant ineligible for resentencing under Proposition 36, which would lessen his punishment if he were eligible, is a determination solely within the province of the Proposition 36 court to make without regard to any factual finding by the trier of fact." (*Newman*, at p. 724.) "[A] Proposition 36 court may determine whether one or more of these disqualifying factors exists independent of the elements of the current offense and any attendant sentence enhancement allegation." (*Newman*, at p. 726.)

Defendant also asserts that there is no evidence that he personally inflicted great bodily injury on the victim, or that he personally caused any particular injury to the victim. For this proposition, defendant cites section 12022, subdivision (a). However, that section does not refer to great bodily injury; section 12022, subdivision (a), addresses committing or attempting to commit a felony while armed with a firearm. That section has no relevance or applicability here. It appears that defendant intended to reference section 12022.7, subdivision (a). That section provides an enhancement for the *personal* infliction of great bodily injury. To the extent that defendant asserts an express finding that he *personally* inflicted great bodily injury on the victim is necessary to infer his

31

intent to inflict great bodily injury, we disagree.  The disqualifying factor speaks to the *intent* to inflict great bodily injury, not the *personal infliction* of great bodily injury as required by section 12022.7, subdivision (a).  (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii); see *Newman*, *supra*, 2 Cal.App.5th at p. 725.)  Thus, the plain language of the Act does not contain a personal infliction requirement.  " 'We presume the [electorate] intended everything in a statutory scheme, and we do not read statutes to omit expressed language or to include omitted language.  [Citation.]  When " ' " 'a statute on a particular subject omits a particular provision, the inclusion of such a provision in another statute concerning a related matter indicates an intent that the provision is not applicable to the statute from which it was omitted.' " ' " ' "  (*Guilford, supra*, 228 Cal.App.4th at p. 657.)  Moreover, by convicting defendant of a violation of section 4501, the jury did determine that defendant assaulted the victim by "means of force likely to produce great bodily injury."  (§ 4501.)  His intent, thus, was inferable from the nature of the facts underlying the conviction.

We conclude that substantial evidence supports the trial court's determination that defendant intended to inflict great bodily injury on the victim within the meaning of sections 667, subdivision (e)(2)(C)(iii), and 1170.12, subdivision (c)(2)(C)(iii), rendering him ineligible for resentencing on his conviction of a violation of section 4501.

## DISPOSITION

The order appealed from is affirmed.


                                         _____MURRAY_____, J.

I concur:


_____HULL_____, Acting P. J.

DUARTE, J., Concurring and Dissenting.


I concur in all parts of the majority opinion except Part IV.B., from which I respectfully dissent.

Absent some farfetched hypothetical, under the majority's broad holding *every* weapon possession is armed if charged broadly enough. The majority opinion erases the distinction between possession where the weapon is readily accessible to a defendant and possession where it is not. In my view, while both are valid theories of possession, only the first is armed possession. Thus I am compelled to dissent.

The majority writes that because weapon possession "can be a continuing crime," "when a weapon is available to a defendant to use offensively or defensively *at any time* during the actual or constructive possession of the weapon within the time period for which defendant was charged, the defendant was armed." (Maj. opn., *ante*, at pp. 20-21; see also *id.* at p. 3 [a defendant is armed if "he or she was present with the weapon and had it available for use *at any time* he or she had actual or constructive possession of it within the time period for which the defendant was charged and convicted"], all emphases in original.)

Under the majority's holding, a hypothetical defendant who acquired a weapon and immediately secured it in a safe, then buried the safe and left the state, remaining away for multiple years, would be classified "armed" with that weapon were he eventually charged with its possession. Apparently, this classification would be valid provided the date range on the charging document encompassed the date of the weapon's *acquisition*. This would be true even if the date of the weapon's acquisition preceded the weapon's discovery (and the corresponding discovery of defendant's constructive possession of it) by years. This classification is merited merely because at some point ("*at any time*") the defendant placed the weapon in the safe. At the time of its placement, the weapon was readily accessible to him for use. Thus he is forever "armed" with it,

1

despite being many years and miles removed from the weapon at the time of its discovery.

I understand that these are not the facts of Valdez's case; I discuss his specific situation in detail below. But this is the broad effect of the holding's application.

I disagree with the majority that *People v. Bland* (1995) 10 Cal.4th 991 compels this conclusion. (See maj. opn., *ante*, at pp. 21-22.) In the drug cases of *Bland* and *People v. Delgadillo* (2005) 132 Cal.App.4th 1570, both relied on by the majority, because of the proximity of the guns at issue to the drugs, it was clear that the defendants were armed with the guns at the time they were dealing drugs. But *Bland* and *Delgadillo* are not weapon possession cases; they are drug cases with weapon enhancements at issue. Those cases start with a completely separate offense from any arming analysis and build on that offense, requiring proof that during commission of the continuing drug offense a defendant had a weapon readily available for use to further that offense. This analysis stands in sharp contrast to the necessary analysis in a weapon possession case where the "armed" analysis is built on the *same conduct* as the charged possession. The key moment in time as well as in physical location for the "armed" classification in the drug cases is the discovery of the drugs, the charged crime being drug possession for sale. In those cases, at the time the defendants were discovered to be in (constructive) possession for sale of the drugs, the guns were *with* the drugs, and easily accessible to the defendants while they were selling drugs. If the guns in those cases had been stored *away* from the drugs at the time the drugs were discovered, the results of those cases would be different.

At the time Valdez was discovered to be in constructive possession of the weapon, it was stored and secured away from him. There is no evidence that Valdez was ever seen in actual possession of the weapon, as far as can be gleaned from this record. In my view, he cannot properly be classified as armed "during the commission of the current offense" merely because at some unwitnessed point in time he was presumably in the cell with the weapon. As the majority acknowledges (maj. opn., *ante*, at pp. 22-23, fns. 14,

2

15), published cases have agreed with my position in dicta, but those courts were not directly confronted with a case such as this one, where defendant's criminal conviction was based *solely* on evidence of constructive possession. Although I agree that those cases are not directly on point, I find them instructive.

In *People v. White* (2014) 223 Cal.App.4th 512, at pages 523-524, the Fourth Appellate District, Division One analyzed the application of the "armed" classification to defendant's conduct as a felon in possession who was spotted by the police in actual possession of the gun--carrying it--and then, witnessed by police, threw the gun into the bed of his truck, from where it was later recovered. I agree that White was armed during the possession offense with which he was charged, as the trial and appellate courts found. But the *White* court went on to note that although White was observed in actual physical possession of the firearm, conviction under the relevant statute (former Pen. Code, § 12021, subd. (a))[1] could also be under the theory of constructive possession. The court explained that: "while the act of being armed with a firearm--that is, having ready access to a firearm [citing *Bland*]--necessarily requires possession of a firearm, possession of a firearm does not necessarily require that a possessor be armed with it. For example, a convicted felon may be found to be a felon in possession of a firearm if he or she knowingly kept a firearm in a locked offsite storage unit even though he or she had no ready access to the firearm and, thus, was not armed with it." (*White,* at p. 524.) The felon contemplated by the *White* court in this analysis surely had ready access to that gun at some point--when he or she placed in the safe, at a minimum. Yet the *White* court declined to classify that hypothetical felon as armed with the gun, even though he was clearly in constructive possession of it, presumably at the time of its detection. Summing up, the court stressed that White's offense was one of actual, not constructive, possession

---

[1] Undesignated statutory references are to the Penal Code.

3

of the gun, given that White was carrying the gun at the time he was spotted by the police, and emphasized that for this reason the "armed" classification was appropriate. (See *Id.* at pp. 525-526.)

This court seemed to be in basic agreement that there is a separation between possession and armed possession in *People v. Elder* (2014) 227 Cal.App.4th 1308, citing *White* and noting that *White* "makes the point that if constructive possession was the basis for the prior conviction, not every conviction for possession will establish that a defendant was armed." (*Id.* at p. 1314, fn. 7.) *Elder* itself makes the point that "not *every* commitment offense for unlawful possession of a gun *necessarily* involves being armed with the gun, if the gun is not otherwise available for immediate use in connection with its possession, e.g., where it is under defendant's dominion and control in a location not readily accessible to him at the time of its discovery." (*Id.* at pp. 1313-1314.) Although Elder was outside the door of his apartment when the police caught him, there appear to have been two accessible guns inside, as well as a recent photograph of defendant in actual possession of one of the guns. (*Id.* at p. 1317.) *Elder*'s conclusion that defendant was "armed" with those guns which were immediately inside his apartment is much more defensible than a conclusion that defendant here was "armed" with the altered toothbrush containing the razor, found hidden in one of the cubicles in his shared cell while he was secured in the shower area and unable to get to his cell. The relationship between defendant and his altered toothbrush in this case in precisely that described by the *Elder* court, "e.g., where [the altered toothbrush] is under defendant's dominion and control in a location not readily accessible to him at the time of its discovery." (*Ibid.*)

The Fifth Appellate District's *People v. Osuna* (2014) 225 Cal.App.4th 1020, at page 1030, agrees with the idea that constructive possession does not equate to "armed" possession without at least some indication of ready access in close temporal proximity to the discovery of the offense. Being secured elsewhere and unable to access the cell containing the weapon, let alone the cubicle or the weapon itself, is akin to the

4

hypothetical parolee in *Osuna* whose bedroom is searched while he is away from home. Although the majority classifies any comparison of *Osuna* with the instant case as inapt (maj. opn., *ante*, at pp. 22-24), I do not agree that Valdez was "simply in another part of his home" (*id.* at p. 23) while he was held by force in another part of the facility and unable to return to his cell. The record does not indicate that Valdez had *any* access to his cell while he was detained away from it, much less ready access to the weapon secreted therein. The majority also discusses *People v. White* (2016) 243 Cal.App.4th 1354, at pages 1361-1362, where the Fourth Appellate District, Division One upheld an ineligibility finding by the trial court based on the armed classification. There, the evidence produced at trial showed that not only was defendant likely carrying the gun in his fanny pack when first observed by law enforcement, but also that he was admittedly within arm's reach of the gun during the course of the pursuit which resulted in his being apprehended and charged with the gun's possession. (*Id.* at p. 1358.)

These cases require at least *some* evidence of ready access to the weapon at the time its discovery was ongoing, although they are arguably trending toward broadening that requirement. I am not inclined to continue down this slippery slope and further blur the line between actual and constructive possession, and current and remote availability of the weapon for use.[2] Being armed with a weapon requires possessing that weapon in a manner which heightens the ease and probability of its use. The record shows only that Valdez constructively possessed a sharp object, which was first seen hidden in his cell while he was detained elsewhere.

---

[2] To the extent an earlier case from this court does not appear to require witnessed or admitted availability of the weapon to the defendant during its discovery (see *People v. Hicks* (2014) 231 Cal.App.4th 275 [defendant armed where witnesses saw backpack containing gun in defendant's possession at some point, but timing of backpack's possession by defendant unclear]), I disagree for the reasons I have discussed.

5

In *People v. Burnes* (2015) 242 Cal.App.4th 1452, although the defendant admitted possession of a firearm and possession of a deadly weapon with his no contest pleas to those counts, the Sixth Appellate District reversed the trial court's determination that defendant was armed for purposes of assessing eligibility for Proposition 47 relief. The reversal was due to the trial court's reliance on the probation report to find facts supporting its determination; however, had the mere fact of conviction on the firearm and weapon possession counts been enough to establish that defendant was "armed," reversal would not have been required. Any error in reliance on the probation report would have been harmless. Thus at least impliedly, the *Burnes* court agreed that the defendant's conviction of these possession offenses did not automatically equate to his being armed.

To the extent that the majority relies on policy to justify its broad holding, I certainly agree that weapon possession by prisoners is dangerous. However, defendant's offense was not classified by the electorate as a disqualifying offense per se. (See § 1170.126, subd. (e)(1), cross-referencing § 667.5, subd. (c).) Only if he were actually "armed" with the weapon "during the commission of the current offense"--constructive possession of the weapon--is he precluded from seeking recall of sentence. (§ 1170.126, subd. (e)(2), cross-referencing § 667, subd. (e)(2)(C)(iii).) If he is permitted to *seek* recall because he was in constructive possession of the weapon but not armed with it, he is still subject to the trial court's determination as to whether his resentencing poses an unreasonable risk of danger to public safety. (§ 1170.126, subd. (f).) The trial court may consider all of those concerns expressed by the majority opinion in its determination of risk, as well as any other relevant evidence. (See § 1170.126, subd. (g).)

The question before us is not whether defendant is dangerous, or the intent of the electorate in approving Proposition 36, but simply whether defendant was armed in the commission of the current offense. " '[I]t is the availability--the ready access--of the weapon that constitutes arming.' " (*People v. Bland*, *supra*, 10 Cal.4th at p. 997.) On the record we were provided, it cannot be said that Valdez was armed in the commission of

6

his constructive possession offense.  Nor can it be said that my hypothetical defendant, long separated by time and distance from his gun, is forever armed with it and thereby ineligible to petition for recall of his sentence.

For these reasons, I respectfully disagree with the majority's analysis and conclusion in Part IV.B.


_____Duarte_____, J.

7